### WASHINGTON, Plaintiff-Appellant, v. WASHINGTON, Defendant-Appellee.

Ohio Appeals, Second District, Montgomery County.

No. 2106. Decided December 11, 1950.

Gus W. Byttner, Dayton, for plaintiff.
Jacobson & Durst, Dayton, for defendant.

## OPINION

By THE COURT:

This is an appeal on questions of law from a decree of the Common Pleas Court awarding "temporary and permanent alimony" to the plaintiff after she had been granted a decree of divorce from the defendant for his aggression on the ground of gross neglect of duty.

The defendant had filed a cross-petition in which he sought a decree on the grounds of gross neglect of duty and extreme cruelty.

Upon trial had, although there was some testimony offered by the defendant himself which, if true, could have been held to have been extreme cruelty, he had no corroboration and no decree could have been granted to him upon that ground. He made no proof to support his claim of gross neglect of duty.

The plaintiff's testimony established gross neglect of duty on the part of the defendant in that he failed to provide for her during practically all of their married life except, in part, during the period when he was in the military service. Plaintiff was corroborated by other witnesses.

The error assigned is that the court failed to award alimony to the plaintiff.

The decree recites the award to the plaintiff of the "defendant's share in certain household furniture and furnishings" and "any and all interest that the defendant may have or claim to have in and to a 1939 model automobile, the legal title to which is now in the plaintiff." The joint title of the parties to certain real property was not disturbed. The court fixed as reasonable attorney's fee $250.00 to counsel for each of the parties, made the total a lien upon the real estate and thus required that each pay for the legal services of his own counsel.

The automobile was a 1939 model Ford, original cost something over $500.00, upon which there was a down payment reducing the amount to $396.75 which was secured by a mortgage loan. The only testimony as to the value of the car was that, at the time of the trial, it was worth $150.00. It was purchased in September, 1943, and the defendant took title in his name. One month later, in October, 1943, the defendant was called into the Army, served until March, 1945, was temporarily released from March to August, 1945, returned in August, 1945, and was finally discharged in October, 1945. Plaintiff testifies, and it is probable and not disputed, that of $50.00 allowance made to her by the Government on the order of the defendant, she paid $35.50 per month on the

purchase price of the automobile. If so, the automobile was, with the exception of the down payment, completely paid for by the plaintiff out of her own personal funds before the defendant returned from the service. It was wrecked and it cost $79.50 to repair it which plaintiff testifies she paid. At that time the title was taken in her name after the loan company re-possessed the car. It is obvious that the award to the plaintiff of any interest that the defendant had in the automobile was of little or no monetary value.

In April, 1946, the parties acquired jointly a piece of real estate at 251 Conover Street, Dayton. $500.00 was paid down and a G. I. Loan taken back for the balance of $3,500.00. It is impossible to tell exactly how much each party paid of this $500.00 or whether all of it was borrowed because the agent of the Progress Finance Company which made this original loan said that it advanced but $375.45. It does, however, appear that when the parties separated there was a balance due of $339.53, which the plaintiff testifies, and it is not denied, that she has paid. Thus, of the total sum advanced to the parties on the original loan there had been paid at the time of separation the sum of $38.93. From the time of the purchase of this property until the date of trial there had been paid on the loan the sum of $36.00 per month, leaving $9.00 per month for taxes, repairs, up-keep, etc. The balance due had been reduced at the time of the trial to approximately $2500.00. The plaintiff testifies, and it is not denied, that two months' rental, or $90.00, was collected by the defendant and no part of it applied on the mortgage loan. Thus, if it be granted that the defendant advanced all of the $500.00 down payment over and above the $378.45 secured from the loan company he paid of the original purchase price but $122.00. If he paid one-half of the $38.93 which was paid between the time of the original loan and the amount due when the parties separated this would amount to $19.46, or a total of $141.46. If he retained $90.00 in rentals, this leaves the sum of $51.46 as representing the sum total of the amount that the defendant paid on the purchase price of this property out of his own funds. Although we grant that our computation may be inaccurate because of the state of the record, it is reasonably certain that any substantial reduction in the principal sum due on the mortgage loan has been accomplished by rents from the property. The only other interest then, of substance, that the defendant had in this real estate was in the advance, if any, in the value of the property. Against the plaintiff's interest in this real estate the trial judge has required her to pay for the serv-

ices of her attorney, the cost of which ordinarily would be taxed as costs and required to be met by the defendant.

The parties had furniture and furnishings the value of which both fixed at $800.00 to $900.00. The plaintiff had some of these effects when they were married. She said she had $300.00 worth. However that may be, the maximum value of defendant's interest in this furniture would be less than $400.00. There is some testimony that part of the money secured on one of the loans represented purchase price of some of the furniture and plaintiff says she paid $155.00 of its cost. In any event, the only part of the award which may be determined to represent a detriment to the defendant was his interest in the furnishings which at most was probably less than $300.00.

The parties were married about six and one-half years prior to the decree. Plaintiff had been married three times before and her age seems to be somewhat in dispute. Neither did the defendant know his age; however, he is much younger than the plaintiff and has much more earning power. Plaintiff was a minister. The church which she served was a part of the same structure in which she lived for which the rent was $20.00. She was paid $65.00 per month and did one ironing a week.

During all of the time that the defendant was in civilian life he was employed at a good weekly wage. Testimony is that it has been as high as $80.00 per week. It is testified by the plaintiff and corroborated in part by one of her witnesses that all that the defendant ever gave her out of his earnings was $10.00 per week. From the date of their separation, about two and a half years before the trial, defendant admits that he gave her nothing. During his military service she received $50.00 per month, $35.50 of which, as we have heretofore said, she paid upon balance due on their automobile. Defendant testifies that he gave her each week all but $10.00 of the proceeds of his work checks. As to this there is no corroboration.

At no time was the plaintiff awarded alimony pendente lite or attorney's fees. It cannot be said that the plaintiff in the decree was awarded nothing of value but surely what she was awarded was of little value and did not touch his share of the real estate nor his earnings. Plaintiff's share in the real estate was encumbered with a lien for $250.00, her attorney's fees.

This case is somewhat unusual in that the record probably affords as sound a basis for determining the equity of the decree as the actual trial of the case.

**Sec. 11990 GC** provides:

"When a divorce is granted because of the husband's aggression, the court shall, * * *, allow such alimony out of her husband's property as it deems reasonable, having due regard to property which came to him by marriage and the value of his real and personal estate at the time of the divorce."

Sec. 11991 GC provides:

"Such alimony may be allowed in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or instalments, as the court deems equitable.

In **Fickel v. Granger, 83 Oh St 101**, it is said:

"Alimony is awarded by the Court upon considerations of equity and public policy and is founded upon the obligation, which grows out of the marriage relation, that the husband must support his wife, which obligation continues after legal separation without her fault."

And in **Lape v. Lape, 99 Oh St 143**, it is stated:

"Where a decree for divorce is granted to a wife on account of the aggression of her husband, an allowance of alimony may be based on future personal earnings or wages of the husband. In such a case the court is not necessarily limited to a consideration of property in possession of the husband at time of decree."

Thus, here, the court could have awarded to the plaintiff the one-half interest of the husband in the real estate and could have fixed alimony payable in periodical instalments. It is highly probable that this defendant at the time of the trial was earning as much as $80.00 per week because his wife testified that at one time his check was in that amount and he did not see fit to state specifically what his earnings were.

We are satisfied that considering the sections of the Code, which we have heretofore quoted, and the authorities cited the award of alimony in this case was grossly inadequate. If the plaintiff was to be required to pay her own counsel out of her share of the real estate then the trial judge should, at least, have awarded her the defendant's one-half interest in the real property, especially as there was no provision made for alimony by weekly instalments out of his earnings.

It will be the order of this Court that, if the defendant will accept a decree awarding to plaintiff, as alimony, his half interest in the real estate to the plaintiff, and pay his own attorney independent of the real estate, the decree in Common Pleas Court may be modified accordingly. Otherwise the cause will be remanded for new trial. This order will still require the plaintiff to pay her own counsel fees, and certainly is as little as should be awarded.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.