Garvin C. TAYLOR, Appellant
(Plaintiff below),

v.

Frances A. TAYLOR, Appellee
(Defendant below).

No. 2935.

Supreme Court of Wyoming.

Dec. 27, 1960.

Rehearing Denied Feb. 15, 1961.

Clarence G. Cypreansen and R. N. Ogden, Casper, for appellant

Ernest Wilkerson, Casper, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This action for divorce was instituted by plaintiff, Garvin C. Taylor, against Frances A. Taylor, defendant, on the ground of indignities. An answer was filed by the defendant, denying indignities and filing a counterclaim for a divorce on account of indignities to the defendant on the part of the plaintiff. The pleadings were subsequently amended by both parties, setting forth as a ground for divorce the lack of cohabitation for a period of over two years. The court granted a divorce to the defendant on the latter ground and provided that the plaintiff should pay alimony in the sum of $5,000. It also provided that the plaintiff should make an assignment or quitclaim deed in a form satisfactory to the defendant conveying to the defendant the so-called White Sulphur Springs ranch in Montana, hereinafter mentioned, and the court further provided:

"3. That Garvin C. Taylor shall reimburse Frances A. Taylor for costs and personal expenses incurred by her in defending this action in the amount of $250.00, and shall further pay to Ernest Wilkerson, attorney for Frances A. Taylor, the amount of $350.00, both of which payments shall be made within 15 days after the filing of this Judgment and Decree.

"4. That Garvin C. Taylor shall pay to Frances Taylor, as alimony, the further amount of $5,000.00, which shall be paid in the amount of $100.00 per month during any month in which Garvin C. Taylor shall be employed and earn an amount in excess of $100.00. Further, the full amount of $5,000.00, or any amount unpaid thereof, shall become immediately due and payable at any time that Garvin C. Taylor shall acquire, by purchase, gift, inheritance or otherwise, properties sufficiently

valuable to satisfy the amount then due to Frances A. Taylor under this Judgment and Decree, and Frances A. Taylor may levy execution upon any such assets and have the right of garnishment, attachment or otherwise, in order to enforce the terms of this Decree."

The parties will be mentioned herein as in the court below. No appeal was taken from the judgment of divorce but only from the other provisions in the judgment herein.

Purposely leaving out some unpleasant matters, we find the facts are substantially as follows: The parties were married in January 1951. At the time of the trial in this case in 1959 plaintiff was forty-one years old and the defendant fifty-two years old. Ed Taylor, the father of the plaintiff, died intestate in the early part of 1952, leaving a ranch called the Blue Creek Ranch which was incorporated, the corporation having issued three thousand shares. The plaintiff has a sister and she and plaintiff and their mother, Ethel, were the only heirs at law. The ranch apparently was worth approximately $190,000. In May 1952 plaintiff, joined by his wife, quitclaimed the plaintiff's interest in the corporation to Ethel Taylor, plaintiff's mother. Plaintiff testified that this was done because of the help extended to him by his father in earlier years and because the mother was supporting his three minor children by a former marriage. Plaintiff and the defendant herein have no children.

At the time of the marriage of the parties herein, the defendant had inherited from a former husband an estate of approximately $40,000. Plaintiff owned the so-called Red Cabin Ranch in Wyoming and sold it to his father for $17,000. Plaintiff and defendant in 1951 bought the so-called Big Timber Ranch in Montana for $52,500. Plaintiff paid down the sum of $15,000. Defendant remodeled the house, paying over $5,000 out of her own money. They sold this ranch in 1952 at a profit of some $26,000 or thereabouts. This profit was disbursed in various ways unnecessary to be mentioned herein. They then bought the White Sulphur Springs ranch in Montana in 1952 for $67,-500, paying down only $15,000. Plaintiff thereafter paid the interest on the purchase price for two years, but no other amount was paid on the principal. The plaintiff had some 221 head of cattle in Wyoming worth about $60,000. These cattle were moved to Montana. The parties also bought other cattle but had to mortgage the cattle. The cattle business was poor in those years. It "turned into a debacle", as plaintiff stated. As a result, most of the property of both plaintiff and defendant was lost. The parties separated in 1954. Plaintiff gave defendant a bill of sale for the cattle, apparently about 313 head, telling her to salvage as much as she could after paying the indebtedness against them. In March 1955 plaintiff gave a quitclaim deed to Lester C. Rader from whom the White Sulphur Springs ranch had been bought but defendant did not join in the deed. She still had possession of the ranch at the time of the trial but was engaged in litigation with Rader.

Without entering into other details showing the loss sustained by the respective parties herein, suffice it to say that at the time of the trial defendant had: (1) An automobile given to her by her children; (2) seventy head of cattle valued at $200 a head which she had on the White Sulphur Springs ranch, renting them out, mortgaged for $9,500, leaving an equity of $4,500; (3) a house in California valued at $12,000, mortgaged for $4,500, leaving an equity of $7,500; (4) cash of $300; (5) an annuity of twenty-nine dollars a month; and (6) some rent. Plaintiff at the time of the trial had no property whatever except one share in the Blue Creek Ranch Company valued at about $60.00 and three lots in Kaycee which are probably of little value. He still owed $8,000 on a note signed with him by his father, paid by the mother, and assigned to the estate of Ed Taylor. He also owed, as he testified, the sum of $2,500 to the Wyoming National Bank, the sum of $135 to his physician, and some other indebtedness arising out of his illness.

Plaintiff is afflicted with a hernia. In February 1959 he suffered a coronary

thrombosis, was in the hospital for five weeks, and at the time of the trial still had to visit his physician twice a week. He lives with his mother, and while he had drawn a salary of $300 a month previously he was not earning anything at the time of the trial. So far as the record shows, the defendant's health is good.

Counsel for plaintiff complain that the court erred in directing the plaintiff to give the defendant an assignment or quitclaim deed for the White Sulphur Springs ranch in Montana. We find no merit in that contention. Plaintiff previously, as already noted, had given a quitclaim deed to Rader so he had no further interest in it and another quitclaim deed to the defendant could do him no harm. Counsel indicate that he might be guilty of a felony by giving two deeds to the land. There is no merit in that. A man can give a quitclaim deed to the Big Horn Mountains but if he has no actual interest therein no harm is done. The order of the court reads that he should give an assignment or quitclaim deed in a form satisfactory to the defendant. That is somewhat equivocal. That statement should be modified to read that he should give to the defendant a quitclaim deed to the land above mentioned duly signed, witnessed, acknowledged and delivered by him.

We should not hesitate to affirm the judgment of the trial court in awarding defendant alimony in the sum of $5,000 if the plaintiff here were an able-bodied man, but having been afflicted with a coronary thrombosis and a hernia makes his future earning capacity somewhat doubtful. The court provided, among other things, that:

"* * * Garvin C. Taylor shall pay to Frances Taylor, as alimony, the further amount of $5,000.00, which shall be paid in the amount of $100.00 per month during any month in which Garvin C. Taylor shall be employed and earn an amount in excess of $100.00. * * *"

The court probably did not mean that. Under the decree plaintiff would be compelled to pay $100 per month if he earned, for instance, $110 a month. He is entitled to a living and the court should not compel him to live on the charity of his mother. The statement of the court, as above mentioned, should be modified to read that he should pay the amount specified if he earns $100 a month over and above the sum of $100 per month.

Judging from the facts as outlined in the conclusions herein, it is probable that the remainder of the provisions of the judgment are based in the main upon the fact that the plaintiff may inherit property from his mother. Counsel for defendant argues that this may be done. Counsel for the defendant cites us to Washington v. Washington, Ohio App., 103 N.E.2d 300, 302. The court in that case, quoting from another Ohio case, stated:

"'Where a decree for divorce is granted to a wife on account of the aggression of her husband, an allowance of alimony may be based on future personal earnings or wages of the husband. In such a case the court is not necessarily limited to a consideration of property in possession of the husband at time of decree.' [Lape v. Lape, 99 Ohio St. 143, 124 N.E. 51, 6 A.L.R. 187]"

See also 27B C.J.S. Divorce § 295(2), n. 51 (1959) and cases cited. These cases do not deal with the expectancy of an inheritance. In Polate v. Polate, 331 Mich. 652, 50 N.W. 2d 190, it was held that the court rightly disregarded an expectancy of an inheritance when the estate was not yet settled and it was indefinite as to the amount which plaintiff would inherit. In Ferguson v. Ferguson, 147 Mich. 673, 111 N.W. 175, the defendant husband apparently had a definite expectancy of inheritance from a trust fund. The court said that if the right were not salable it could not be taken into consideration in what defendant's wife should be allowed. If it were salable its value should be determined by what purchasers would pay for it. In the case at bar no purchasers of course could be found to pay anything for a mere possibility.

In view of the fact that both parties had been previously married; that no children

were born as a result of their marriage; that their marriage was only for a short time; that the defendant, so far as the record shows, is in good health; that the plaintiff suffered a coronary thrombosis, the ultimate result of which is uncertain; that plaintiff still owes a considerable amount of money, while the defendant does not owe anybody so far as the record shows; and that the loss which the parties sustained appears to be an unfortunate lack of success of their joint venture; and taking all other facts and circumstances heretofore mentioned into consideration, we think that the amount of alimony allowed to the defendant is excessive and should be reduced from $5,000 to $2,000 and that, on account of the appeal herein, the fee for counsel of defendant should be increased from $350 to $500. The trial court is directed to modify the decree as herein mentioned and, as so modified, the judgment is affirmed.

Affirmed as modified.

### Order

This cause having been heretofore taken under advisement on the petition of appellant for a rehearing by the court consisting of Mr. Chief Justice BLUME, Mr. Justice PARKER and Mr. Justice HARNSBERGER, and the court being now fully advised in the premises, it is ordered that said petition for rehearing be, and the same is hereby, denied.