*In re* MARRIAGE OF KURTLYN LEE, Petitioner-Appellee, and RICHARD LEE, Respondent-Appellant.

First District (5th Division)   Nos. 84—1743, 84—2867 cons.

Opinion filed July 26, 1985.

R. S. Maione, of Drugas, Maione, Morgan & Hyink, Inc., of Chicago, for appellant.

Jack A. Hertz, of Mitchell & Hertz, of Chicago (David A. Novoselsky, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Respondent Richard Lee appeals from the circuit court's denial of his motion to vacate a judgment of dissolution of marriage. Respondent contends: (1) the judgment for dissolution incorporated a property settlement agreement which was unconscionable and the product of coercion; (2) the judgment was based on false testimony by petitioner Kurtlyn Lee; (3) a new hearing on respondent's motion should be

granted because the circuit court erroneously permitted one of petitioner's attorneys to testify; (4) the circuit court's award of attorney fees and costs to the petitioner was an abuse of discretion.

We affirm.

The parties were married in 1973. A judgment for dissolution of their marriage was entered January 7, 1983. The judgment incorporated a property settlement agreement signed by both parties December 6, 1982. Petitioner received custody of their seven-year-old son, with respondent agreeing to pay $600 per month child support. Petitioner also received the marital residence (a condominium subsequently valued at approximately $80,000 to $90,000 with a $14,000 mortgage), a 1982 Pontiac (valued at $10,000 but apparently not completely paid for), a $50,000 whole life policy (with a cash value of $14,000), a $100,000 term insurance policy (no value determined), household furniture (subsequently valued at approximately $6,000), and $187 from a joint bank account.

Respondent received a Bronco truck (valued at $14,000 to $18,000 with a $7,000 lien), a snowmobile and trailer (subsequently valued at $1,400), a van (valued at $4,500); stock in two family-owned restaurants (the disputed valuation of this stock is discussed later in this opinion), and $1,800 from a joint bank account ($1,340 of which was used to pay some of petitioner's attorney fees). Petitioner also gave up any right to maintenance, which respondent's attorney conceded at trial was worth $5,000 to $10,000.

At the hearing on the petition for dissolution respondent testified that he was not contesting the petition, that he had read and understood the property settlement agreement and that he wanted the court to approve it. However, at the hearing on the motion to vacate respondent attempted to repudiate this testimony.

Respondent testified that he had discussed the property settlement agreement with petitioner on a number of occasions before signing it. After their discussions she went to her lawyer, Ray Allen, who prepared the agreement. Respondent testified that when petitioner showed him the draft he was surprised at what she wanted. He consulted an attorney for Lang Lee, who in turn recommended that he consult attorney R. S. Maione (who has subsequently represented him on this cause). Respondent conceded at the hearing that although Maione told him he should not sign the agreement, he signed it anyway.

Respondent offered several explanations for having signed the agreement. He testified that he did so because he hoped petitioner would later return to him. However, he also testified that he agreed

because petitioner threatened to report to the Internal Revenue Service that he and his parents were "skimming" money from corporate sales. Respondent testified that this accusation was untrue, but caused him to sign the agreement because he feared embarrassment to his family. Respondent also testified that petitioner threatened to remove their child to California and to "go for his throat" concerning their division of property if he didn't agree to the terms she and her lawyer presented. According to respondent, that attorney (Ray Allen) also threatened that respondent's failure to sign would cause them to "go for his throat" financially.

Respondent, who had attended college for two years, testified that he was the manager and chef at Lang Lee 1, a Chinese restaurant in Evergreen Park. He owned 20% of the stock in Lang Lee 1, Incorporated and one-sixth of the stock in a second family-owned restaurant, Lang Lee 2.

Petitioner specifically denied in her testimony that she had threatened respondent. At the time of the dissolution she was making approximately $10,000 per year. She stated that she and respondent agreed to a property settlement which her attorney then drafted. She and respondent had lunch after the dissolution prove-up, at which time he expressed his relief that the matter was over. Attorney Allen also testified that he had never threatened respondent. Petitioner had given him the terms which she and respondent had agreed to. Subsequently respondent telephoned to ask if he thought this agreement was fair. Allen told him that it was.

Respondent presented the testimony of two accountants concerning the value of his stock in the two family corporations. Raymond Garrigan, a certified public accountant, had done the books for Lang Lee 2 since the start of that business in May 1981. The other stockholders in that corporation (each with a one-sixth interest) were respondent's father, stepsister, brother-in-law, and two brothers. In 1983 respondent was paid approximately $20,000 for his work with the restaurant.

Garrigan's opinion was that respondent's stock in Lang Lee 2 was worth nothing. He based this in part on the fact that the restaurant had a net loss of $16,017 in 1982 and a profit of only $544 in 1983. However, Garrigan also testified that in 1982 the restaurant had gross sales of $633,066 and gross profits (gross sales minus cost of food and beverages) of $288,450. In 1983 gross sales were $685,923 and gross profits were $307,254. Indeed for the first eight months of the restaurant's operation (beginning May 1, 1981) gross sales were $361,000.

In 1983 Garrigan had prepared a financial statement for the corporation. The statement included his notation that because the management had omitted substantially all of the disclosures required by generally accepted accounting principals (including changes in financial position and the amount of any retained earnings), the statement was not for those not informed of those items. Garrigan conceded that in effect this meant he was not taking responsibility for the accuracy of the statement because he did not perform the audit.

Garrigan also testified that the only method of establishing the value of a closely held corporation's stock, which was not traded, would be to determine what a willing buyer would pay in the market place. It was his opinion that respondent's stock had no market value because his was a minority interest. He testified that even if the corporation were worth $500,000 a minority interest would have no value.

Esther Logan, the accountant for Lang Lee 1 since its inception in 1957, also testified for respondent. It was her opinion that respondent's 20% interest was only worth $2,000 because nobody would be interested in stock in a family corporation. However, on cross-examination she conceded that even if the stockholders were offered $100,000 she would not recommend that they sell. The court sought to elicit an estimate of respondent's stock's worth assuming someone desired to buy into the restaurant as a going concern, with its good will retained. However, the witness declined to estimate the value of such a sale.

According to Logan the restaurant's gross sales in 1982 were $632,000, gross profits were $243,000, and the net profit was $5,111. However, the restaurant had retained earnings (profit not distributed to shareholders, but retained in the corporation) of $26,000. According to Logan, some of the money was used to buy equipment. Retained earnings in 1980 were $48,314; in 1981 they were $18,600.

OPINION

■■ We first consider respondent's contention concerning the invalidity of the settlement agreement which he admittedly signed and subsequently reaffirmed in open court at the dissolution hearing. Section 502(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 502(b),) provides:

"(b) The terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence

produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable."

A contract is not unconscionable merely because it appears to be unfair. (*In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 587, 469 N.E.2d 381, 384.) The contract must be totally one-sided or oppressive, one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930, 428 N.E.2d 1005, 1010, quoting *Hume v. United States* (1889), 132 U.S. 406, 410, 33 L. Ed. 393, 395, 10 S. Ct. 134, 136.) This statutory provision does not eliminate such traditional grounds for setting aside settlement agreements as fraud and coercion. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 929-30, 428 N.E.2d 1005, 1010.) The trial court's determination of these issues will be set aside on review only where it is shown to be contrary to the manifest weight of the evidence. *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1088, 424 N.E.2d 1342, 1346.

We find no error in the trial court's determination that the property settlement agreement was not unconscionable and was not the product of coercion. Even assuming that respondent's stock had only the minimal value he claimed for it, there was evidence in the record to support a determination that respondent received property and cash worth $20,700 and petitioner received $86,000 to $96,000 (dependent upon the undisclosed unpaid balance on her $10,000 automobile). When respondent's $20,000 salary, twice that of petitioner, is also considered, this division does not appear to be so one-sided or oppressive as to be unconscionable.

But it is also clear from the record that the trial court was not required to accept the minimal valuation placed by respondent's witnesses on his restaurant stock. As we have noted, respondent's own accountant conceded that she would not recommend that the stockholders in one of those restaurants accept $100,000 for their stock. These factors conclusively negate respondent's contention of unconscionability.

Respondent also testified that the agreement was coerced; the product of his wife's threats to instigate an IRS investigation, to take their child to California, and to seek even more money from him in court. All these accusations were denied under oath by petitioner. Respondent, who admitted consulting a lawyer before signing the agreement, never satisfactorily explained why these alleged threats were not equally effective in preventing his subsequent challenge of the agreement. The sufficient answer to respondent's contentions of coer-

cion is that the trial court as the finder of fact chose not to believe them. We find no basis for disturbing that determination.

■■ We also find no merit to respondent's claim that the dissolution judgment was based on false testimony by petitioner.

At the dissolution hearing petitioner testified, as the basis of her claim of mental cruelty by respondent, that he was cold and indifferent to her, noncommunicative, refused to go out socially with her, and refused to provide her with affection or attention. As the result of his actions she became nervous, irritable, and was unable to sleep or eat. She consulted a physician who prescribed medication.

At the hearing on respondent's motion to vacate, respondent's attorney attempted to impeach petitioner using deposition testimony he elicited from her subsequent to the dissolution hearing. In the deposition she testified that the basis for her dissolution of marriage petition was mental cruelty, that respondent had made her nervous, gave her an ulcer, caused her to lose sleep and she had been required to take medication for all this. Later in the deposition, she stated that her nervousness was caused by general tension resulting from respondent's excess spending. Respondent asked her if there was any other reason for the tension, and she said no.

Based on the purported impeachment, respondent's counsel alleges that petitioner's dissolution hearing testimony was false. We concur with the trial court's observation, when presented with the same contention, that counsel has merely elicited additional grounds to support the dissolution of the marriage.

■■ ■ We next consider respondent's contention that the trial court erred in allowing one of petitioner's attorneys to testify at the hearing on respondent's motion to vacate.

We have noted that attorney Ray Allen testified at the hearing in direct rebuttal of respondent's testimony that Allen had threatened respondent with financial repercussions if he did not sign the agreement. Allen represented petitioner prior to the hearing and remained of counsel during the hearing, but with another member of his firm actually conducting the hearing. At that hearing and on appeal, respondent has contended that Allen's testimony should have been barred under Supreme Court Rule 5—102(a) (87 Ill. 2d R. 5—102(a)), which provides:

"If a lawyer learns after undertaking employment in contemplated or pending litigation or if it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and neither he nor his firm, if any, shall continue representation in the

trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in Rule 5—101(b)(1) through (4)."

Rule 5—101(b)(4) (87 Ill. 2d R. 5—101(b)(4)) provides:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or if it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify *** as to any other matter, if refusal to accept the employment would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

The determination of whether to permit such testimony lies within the sound discretion of the trial court. (*Andrea Dumon, Inc. v. Pittway Corp.* (1982), 110 Ill. App. 3d 481, 490, 442 N.E.2d 574, 580-81; *Cannella v. Cannella* (1971), 132 Ill. App. 2d 889, 893, 270 N.E.2d 114, 117.) In this cause, the trial court noted that it had permitted respondent to testify concerning the hearsay statements of Allen because of the court's belief that Allen would then be available to testify. Respondent has not established that Allen's testimony prejudiced him. Indeed, in the trial court respondent suggested that Allen could testify but Allen's firm would have to withdraw from the case. For these reasons we find that the trial court did not abuse its discretion in permitting this testimony.

We would also note that a principal basis of the rule that a jury might be unduly influenced by the testimony of a lawyer who was in a position to then vouch for his own testimony (*International Electronics Corp. v. Flanzer* (2d Cir. 1975), 527 F.2d 1288, 1294) is not present here, as this was a hearing before a judge and the testifying attorney was not conducting the trial of the cause. In such circumstances it is presumed that a trial court will not place undue emphasis on the attorney's testimony. *Cannella v. Cannella* (1971), 132 Ill. App. 2d 889, 893, 270 N.E.2d 114, 117.

■ Respondent's final contention is that the circuit court abused its discretion in awarding attorney fees and costs of $4,871 to petitioner.

Respondent's principal objection to this award is that it is unfair, given what he alleges was the improper division of property made in the dissolution judgment. We have already determined that the trial court properly enforced the property settlement agreement reached by the parties. Accordingly, respondent cannot rely on this basis to overturn the fee award.

Respondent also asserts that the fees awarded were excessive, stating in his reply brief that "[a] cursory reading of the attorneys' fee petition does not disclose the services rendered, nor the basis for the charges." What respondent has failed to note is that a full hearing was held on this issue at which petitioner's attorney testified in extensive detail about the nature of his services. Furthermore respondent stipulated that he was not challenging the hourly rates charged by petitioner's attorney. This award of fees was within the sound discretion of the trial court, a decision which should not be disturbed on appeal absent a clear showing of abuse of that discretion. (*In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 854, 453 N.E.2d 1357, 1365.) Respondent has failed to meet this burden, and, consequently, we affirm the trial court's determination.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and PINCHAM, JJ., concur.