Julia Ann PURTLE, et al. *v.* Shelby L. McADAMS, et al.

94-28                                      879 S.W.2d 401

Supreme Court of Arkansas
Opinion delivered July 5, 1994
[Rehearing denied September 12, 1994.*]

*Dudley, J., not participating.

*John I. Purtle*, for appellants.

*B.J. McAdams*, for appellees.

ROBERT L. BROWN, Justice. John I. Purtle appeals his disqualification as counsel for certain parties in a foreclosure matter pending in Pulaski County Chancery Court. Authority for this appeal is found at Rule 2(a)(8) of the Arkansas Rules of Appellate Procedure. *See also Herron* v. *Jones*, 276 Ark. 493, 637 S.W.2d 569 (1982). We affirm the chancery court's order of disqualification.

In 1984, appellant Julia Ann Purtle was married to Robert McAdams. Robert McAdams is the nephew of Shelby McAdams and the son of B.J. McAdams. Julia and Robert McAdams owned a home at #2 Eastlake Drive, North Little Rock. They had one son, Bobby, who is described by Julia Purtle as having a severe learning disability though B.J. McAdams disputes this. That same year Julia and Robert McAdams divorced. As part of the divorce settlement, Julia quitclaimed the Eastlake home to Robert McAdams. Julia then married appellant Tommy Purtle. John Purtle is the uncle of Tommy Purtle.

On December 6, 1991, Robert McAdams quitclaimed the Eastlake home to Julia Purtle. At that time, B.J. McAdams contends that the property had an equity value of some $80,000 which was the result of payments made by him. The deed contained a statement that it was given with the understanding that Julia Purtle would furnish a place for their son, Bobby, to live. On December 31, 1991, Robert McAdams, represented by counsel other than John Purtle, sued Julia Purtle for cancellation of that quitclaim deed because at the time he executed it, he had a "lessened mental capacity" and was subjected to undue influence. A letter was attached to that complaint from a psychological examiner, Joseph Brogdon, to the effect that Robert McAdams "would have difficulty understanding the complexities and legal ramifications of any sort of real estate transaction that has transpired between him and his ex-wife." Mr. Brogdon also concluded in his report that Robert McAdams operated "in the borderline range of intelligence" and was "easily confused." In response to a motion for summary judgment, apparently filed by Julia Purtle, Robert McAdams signed an affidavit that he understood that Julia would deed the property

back to him if he requested it. Robert McAdams subsequently refused to appear at the trial of his lawsuit, and the case was nonsuited.

In 1993, the mortgage on the Eastlake home was owned by appellee Shelby McAdams. On March 15, 1993, Shelby McAdams filed a complaint against Julia and Tommy Purtle, among others, seeking to foreclose on the Eastlake home due to default on the debt secured by the mortgage. The Purtles, represented by John Purtle as counsel, answered the complaint and counterclaimed for damages, alleging that the McAdams complaint was part of a vindictive conspiracy by Shelby McAdams and B.J. McAdams to harass Julia Purtle and obtain the Eastlake home by fraudulent means. The Purtles also moved to dismiss the complaint on the same grounds as set out in the counterclaim. John Purtle was the attorney for the Purtles until the order of disqualification which is the subject of this appeal.

On July 30, 1993, Robert McAdams sought to intervene in the foreclosure suit and claimed that his trust funds in the amount of $300,000 were illegally converted by the original mortgagee of the Eastlake home, Constellation Development Corporation, and by B.J. McAdams and that he wanted Julia Purtle to live in the Eastlake home with their son, Bobby. John Purtle represented Robert McAdams in this petition to intervene.[1] That petition has yet to be acted on due to John Purtle's disqualification.

Though this is ill-defined from the record in this appeal, John Purtle also has represented Julia Purtle against Robert McAdams regarding child support payments emanating from the divorce. In his legal brief before this court, B.J. McAdams contends that delinquent child support was used by Julia Purtle as leverage against Robert McAdams to influence him.

On August 16, 1993, B.J. McAdams moved to disqualify John Purtle as counsel for any party in this matter because he represented both Julia Purtle and Robert McAdams when he prepared the quitclaim deed from Robert to Julia. B.J. McAdams stated that he intended to call John Purtle as a witness at the trial.

---

[1]Robert McAdams's father, B.J. McAdams, was shown as a third-party defendant on the petition to intervene though the record before us is unclear as to when B.J. McAdams was brought into the lawsuit in that capacity.

John Purtle responded that Julia Purtle and Robert McAdams do not have antagonistic claims in the current lawsuit, that both want Julia to keep the Eastlake home, and that both want him to continue to represent them. At the hearing on the motion, Robert McAdams testified that he now wanted Julia to have the Eastlake home and for John Purtle to represent him. He further testified that his son, Bobby, was living with him in Benton and not with Julia.

Following the hearing, the chancery court ordered that John Purtle be disqualified as counsel due to the fact that he represented Julia and Tommy Purtle as well as Robert McAdams and due to the likelihood that he would be called as a witness concerning the quitclaim deed which conveyed the Eastlake home from Robert to Julia. The following colloquy depicts in part the chancery court's reasoning for the disqualification:

MR. PURTLE: Your Honor, I want to be sure that I understand and make this simple for the next step, that I am being disqualified because I prepared the deed between the parties before.

THE COURT: Right. Correct.

MR. PURTLE: And also. —

THE COURT: But not just because of that, but because it's a disputed transaction as to how that transaction came about and why. And you had a role in that transaction. Whatever the role was, you had a role in the preparation of the deed. And I don't know what the extent of the role was. That would be subject to testimony. But all I'm saying is, I am not going to prejudge what your role was in it. All I'm going to say is, you did prepare the deed. There is a dispute about how that whole transaction came about and why. And that's it.

MR. PURTLE: But there is no dispute about me playing a part in the transaction before that, because I —

THE COURT: I don't know that yet. You've — there's been a lot of testimony going on about who played what role. I'm not going to prejudge that.

The Model Rules of Professional Conduct, which we have adopted, contain two rules which appear to have played a part in the chancery court's decision. The first is Rule 3.7 dealing with the lawyer as witness. The second is Rule 1.7 concerning conflicts of interest. Rule 3.7 reads as follows:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

That rule, however, deals with situations where the lawyer is to be a witness on behalf of his or her client — not when called as a witness by the opposing party. The first paragraph of the comment to this rule makes that clear: "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." Moreover, the cases cited by B.J. McAdams in his brief are concerned with situations where the attorney seeks to testify on behalf of his or her own client. *See, e.g., McIntosh* v. *Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990); *Calton Properties, Inc.* v. *Ken's Discount Building Materials, Inc.*, 282 Ark. 521, 669 S.W.2d 469 (1984); *Bishop* v. *Linkway Stores, Inc.*, 280 Ark. 106, 655 S.W.2d 426 (1983) (supp'l op.).

That is clearly not the situation here. Moreover, the obvious danger from allowing an adversary to call opposing counsel as a witness and disqualify that counsel as a result is the potential for subterfuge. It could easily be used as a ploy to cripple a party from effectively presenting a case. Finally, we discern no prejudice to John Purtle's clients at this stage from his being called as a witness by the McAdamses. Without discernable prejudice to his clients by his testimony, there is no basis for disqualification. *See* Rule 3.7 of the Model Rules of Professional Conduct (Code Comparison, DR5-102(B); *see also Orsini* v. *Larry Moyer Trucking, Inc.*, 310 Ark. 179, 833 S.W.2d 366 (1992);

*McCoy Farms, Inc.* v. *McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978).

We turn next to Rule 1.7 on conflicts of interest:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

John Purtle currently represents Julia and Tommy Purtle in this matter. He has represented Julia against Robert McAdams in connection with child support for her son, Bobby. He represented Julia in drafting the quitclaim deed for the Eastlake home. He represented Julia against Robert when Robert sued Julia in 1991 to cancel that quitclaim deed. He now seeks to represent Robert as an intervenor in this matter. Despite these entanglements, he showed the chancery court that Julia and Robert McAdams consent to his continued representation in this matter, and their testimony confirms this. Furthermore, he assiduously maintains that his representation of the parties will not adversely affect his relationship as counsel with either one of them.

We do not agree. The concern in all this on the part of the chancery court undoubtedly was Robert McAdams, who according to one evaluation suffers from low mental capacity and is

susceptible to manipulation and influence. Certainly, he has wavered in his positions taken during the history of this case. He deeded the Eastlake home to Julia, then sued to get it back while represented by independent counsel, and now states that he wants Julia to have it. One stated reason for wanting Julia Purtle to have the property is for their son, Bobby, to have a home but at the hearing, Robert McAdams testified that his son was currently living with him in Benton. Robert also presently contends that his father, B.J. McAdams, defrauded him by taking his trust funds, while his father counters that he actually made the payments on the Eastlake home so that Robert could live there and have some equity in the home. All of this is to say that we do not believe that it is reasonable for counsel to believe that by representing Julia Purtle, his niece by marriage, that the interests of Robert McAdams regarding the Eastlake home will not be adversely affected.

Moreover, we do not believe that John Purtle should continue as counsel for Julia and Tommy Purtle. The chancery court found in its order that John Purtle would likely be called as a witness at trial concerning *disputed facts* underlying the preparation of the deed. This was an acknowledgment that he was representing antagonistic interests as counsel for both the Purtles and Robert McAdams. What is worrisome about this is that in his representation of Robert McAdams, John Purtle was in a position to garner information that was helpful to the Purtles and detrimental to Robert. For that reason, we believe that the chancery court was correct in disqualifying him from representing any party in this matter.

As a final matter, John Purtle moves to strike the appellee's brief on grounds that its statement of the case does not conform to our rules, the supplemental abstract is argumentative, and the argument references matters outside of the record. None of the contentions warrants striking the brief, and matters outside of the record were not considered. The motion is denied.

Affirmed.

DUDLEY, J., not participating.