CARTER *v.* WILLIAMS.

5-474

273 S. W. 2d 531

Opinion delivered December 20, 1954.

*Harry T. Wooldridge*, for appellant.

*Brockman & Brockman*, for appellee.

GRIFFIN SMITH, Chief Justice. Purpose of the chancery action was (a) cancellation of a deed claimed to have been forged; (b) in the alternative avoidance because the grantor was mentally incompetent.

Ella and Betty Clayton were sisters who married and in later life owned adjoining properties in Pine Bluff. Ella lived with her husband, J. C. Timms, when she died in March, 1948. Betty married John W. Ester. Over a protracted period the two were separated, but not divorced.

In August, 1942, Ella borrowed $150 from Roger Charles Williams and paid an outstanding obligation against her property. The debt to Williams was evidenced by a deed of trust. In September of the same year Betty deeded her property to Williams for a consideration of $400, reserving life estates to herself and husband.

Ella paid her debt to Williams. When she died Betty inherited the estate. The deed appellants seek to set aside was executed by Betty in September, 1950. If valid it vested title in Williams, subject to Timms' interest. An express disclaimer was filed by John W. Ester. Betty died November 2, 1951.

There was testimony that in 1938 Betty suffered a partially paralyzing "stroke," principally affecting her right arm and hand. Further evidence was that a second stroke occurred in August, 1950, and from that time she could not use her right arm. Another witness testified that she was right-handed.

Williams, with his wife and two children, lived in the house with Betty. Testimony relating to the personal assistance he rendered to Betty, who admittedly was bedridden for protracted periods, and his claim of having extended financial assistance, were considered by the chancellor. Williams said that he paid Betty's household bills, fed and clothed her, and helped Ella when she was ill. Betty had told him that the only way she could show her appreciation would be to leave the property to him. A lawyer, whose professional standing is unquestioned, wrote the deed on information supplied by Williams. The grantee then took the deed to Betty, who did not immediately sign it, but kept it and read it. Williams was positive that Betty had learned to write with her left hand, and that she signed it that way.

Dr. Clyde A. Lawlah, whose qualifications were admitted, testified that he had treated Betty for two years or more. He remembered being called to her home the latter part of August or the first of September, 1950, (approximate dates) when Betty was confined to her bed. She complained of her stomach and inability to eat. During the two-year period he did not diagnose her condition as paralysis, although she had suffered a stroke about twelve years before. The doctor's best recollection was that he saw Betty in 1951, ''probably a month or two before she died, and her condition was essentially the same.''

While disclaiming knowledge of the second stroke it is claimed that Betty suffered, Dr. Lawlah, on cross-examination, said that his patient showed visible evidence of paralysis—''She was partially paralyzed in her right arm, [but] could use her left arm and leg fairly well.'' Williams or his wife paid for each of the calls Dr. Lawlah made.

Horace C. Barnett, an instructor in A. M. & N. College, was the notary public who acknowledged the deed. He is also state supervisor in charge of the Negro Guidance Program in Arkansas. Barnett was in Roger Williams' barber shop Sept. 12, 1950, when Williams asked

him to acknowledge a deed purportedly signed by Betty Ester. After inquiring whether the signature was Betty's, Barnett told Williams it would be necessary to see the grantor, whereupon he was taken to the sick woman's room. "When I got there I asked her if *this* was her signature and she replied that it was. Minnie Folsom was also in the room, and I asked her if she would witness it and she said she would. I did not read the deed to Betty Ester, but I asked her if she knew what it was and she admitted that she did. I do not recall that she made any statement as to why she was signing the deed. She did tell me, though, that she understood the terms of the deed. . . . She told me that she knew what she was signing, and she did not act peculiar or out of the ordinary."

Much of appellants' testimony went to Betty's physical condition and assertions that because of paralysis she could not write. Other witnesses said that the grantor could write with her left hand; that after sustaining the first stroke she did a great deal of sewing and made use of her left hand. Some of appellee's witnesses had heard Betty say she intended that Williams should have the property when she passed away.

There is no contradiction of Barnett's testimony that Betty orally acknowledged execution of the document. The purpose of proving one's handwriting is to establish the fact that the instrument is genuine and that it represents the intent of the party against whom or for whose benefit it operates. *Lynn* v. *Quillen,* 178 Ark. 1150, 13 S. W. 2d 624. For recent cases discussing sufficiency of the evidence to establish deeds see *Temple, Administrator,* v. *Smith,* 222 Ark. 834, 252 S. W. 2d 898; *Wood* v. *Wood,* 223 Ark. 82, 264 S. W. 2d 406.

We find no convincing support for the contention that Betty was mentally incompetent.

The decree is affirmed, but inasmuch as collateral matters not in controversy here must be finally disposed of by the chancellor, the cause is remanded for final orders.