### Reather WATSON v. Phil ALFORD, Administrator of the Estate of Nelson YOUNG, Deceased, et al

73-178                                    503 S.W. 2d 897

Opinion delivered January 21, 1974

*Harkness, Friedman & Kusin,* by: *Donald B. Fried-man,* for appellant.

*Young & Patton,* by: *Nicholas H. Patton,* for appellees.

FRANK HOLT, Justice. Appellant sought to set aside a conveyance of land by her deceased husband, Emanuel Watson, and herself to appellees, Stewart Landes and his wife, Gloria Landes. The chancellor dismissed appellant's

third party complaint and refused to set aside the conveyance. For reversal of that decree, appellant contends that the conveyance should be cancelled inasmuch as Emanuel was not competent to know the nature of the transaction in which he participated. Appellant bases this contention on Emanuel's advanced age, 100 years old at the time he signed the deed, and inadequate consideration received for the land. We think the appellant is correct.

The appellee administrator brought suit to foreclose a mortgage in the sum of $1,000.35 bearing 10% interest per annum, together with a 10% attorney's fee. The mortgage was executed in 1966 on property then owned by Charles Watson, Emanuel's son by a former marriage. A few months later Charles died intestate and Emanuel, being the sole heir, inherited the encumbered property. At that time Emanuel was 100 years of age. He died four years later. Reather instituted her third party complaint in the pending foreclosure proceeding. As indicated, she contends that her aged husband was not competent to transact the sale of their land which was attended by inadequate consideration.

In the oft cited case of *Kelly's Heirs* v. *McGuire,* 15 Ark. 555 (1855), the court announced that if one is "of such great weakness of mind, as to be unable to guard himself against imposition, or to resist importunity or undue influence, a contract, made by him under such circumstances, will be set aside. And it is not material from what cause such weakness arises. It may be from temporary illness, general mental imbecility, . . . . the infirmity of extreme old age." The fact that a grantor is old and in feeble health is a circumstance bearing on the question of mental capacity as is gross inadequacy of price. *Campbell* v. *Lux,* 146 Ark. 397, 225 S.W. 653 (1920), *McEvoy* v. *Tucker,* 115 Ark. 430, 171 S.W. 888 (1914). Of course, we will not set aside contracts for mere inadequacy of price. *Hawkins* v. *Randolph,* 149 Ark. 124, 231 S.W. 556 (1921). The grantor's disability must render him incapable of "intelligently comprehending and acting upon the business affairs out of which the conveyance grew, and to prevent him from understanding the nature and consequences of his act." *McEvoy* v. *Tucker,*

*supra.* Each case dealing with mental capacity must be decided on its own peculiar facts and circumstances. *Hawkins* v. *Randolph, supra.*

Our cases appear in conflict as to the evidentiary standard which is required to establish mental incapacity in the making of a deed. One line of cases holds that only a clear preponderance of the evidence is the required standard of proof. *Campbell* v. *Lux, supra,* and *McEvoy* v. *Tucker, supra.* However, other cases apply the usual quantum of proof which is required to set aside and cancel a deed: i.e., clear, cogent and convincing evidence. *Whatley and Wright* v. *Corbin,* 252 Ark. 561, 480 S.W. 2d 142 (1972), and *Braswell* v. *Brandon,* 208 Ark. 174, 185 S.W. 2d 271 (1945). *Braswell* was relied upon in *Whatley and Wright* as precedent for the clear, cogent and convincing standard with respect to mental capacity. However, neither *Campbell* nor *McEvoy,* the earlier cases, were recognized in *Braswell* which enunciated the stricter evidentiary requirement by citing *Stephens* v. *Keener,* 199 Ark. 1051, 137 S.W. 2d 253 (1940). Significantly, *Stephens* did not deal with mental incapacity as grounds for setting aside a deed. There, mistake and inadequate consideration were the issues.

We take this occasion to resolve the inconsistency in favor of the less strict quantum of proof which requires only a preponderance of the evidence as pronounced by our earlier cases. The rationale is that we can perceive no basis to establish a different standard of proof involving the mental capacity to make a deed from our rule with respect to the mental capacity to make a will. Both are solemn written instruments. We have long recognized the preponderance test as being our guideline in weighing the evidence of testamentary capacity. *Short* v. *Stephenson,* 238 Ark. 1048, 386 S.W. 2d 501 (1965). Applying this standard we now review the evidence in the case at bar.

There is little doubt that Emanuel had grown feeble and incapacitated in his old age. About ten years preceding this questioned conveyance, he had suffered a stroke and since that time was unable to work. Reather testified

that his stroke impaired his mind and severely limited his ability to function physically and mentally. She was instructed by his doctors not to do anything to disturb or aggravate him. In June, 1966, Landes, the purchaser, came to their house and, after she dressed her husband, he accompanied Landes to view the property. The next day, Landes returned with the necessary legal papers for the conveyance which Emanuel signed. Reather signed the papers only after Emanuel became agitated at her reluctance. The next morning Emanuel inquired if she had seen the word "Deed" on the papers. When she confirmed that she had, Emanuel gave her the $200 check Landes had given him and directed her to take the check to Landes and demand a return of the papers they had signed. Landes refused to do this, stating he would only give them to Emanuel. Two weeks lapsed before Emanuel was physically able to go to Landes' office. At that time, Emanuel was told that the land had been sold. He left Landes' office crying.

Other witnesses corroborated Reather's testimony that due to Emanuel's stroke and age, he was unable to look after his business affairs. A lifetime acquaintance testified that due to Emanuel's stroke and age, he was unable to conduct business affairs and that she, as a frequent visitor, assisted in getting Emanuel in and out of his bed. Further, following his stroke, "[H]is mind would come and go and sometimes you knew what he was talking about and sometimes you didn't." When Emanuel learned his property would not be returned, he went to a local attorney's office and left the $200 check with him. This attorney had practiced law in the locality since 1922 and it appears that he was well acquainted with Emanuel since this time. He testified that Emanuel came to his office frequently before his stroke which was about ten years before the conveyance in question; that since then "he had failed very fast;" that "[Y]ou had a hard time explaining anything to him and he had a hard time understanding anything you tried to tell him;" that at the time the deed was made to Landes, Emanuel had only been released from the hospital a few days; that each time he went to the hospital "he was expected to die;" and "he couldn't remember where he ended up and he didn't understand quite why he made the deed and actually he

didn't know why." At that time about $1,000 was owed on the mortgage of the 67.5 acres. The mortgage was not due for another two years. This attorney testified that he was familiar with the property and described it as "good up hill land." "It was in pasture and in some timber also." Since he had bought and sold land in this locality, he estimated that Emanuel's land had a value of $100 per acre or $6,750. The attorney believed that Emanuel was not competent at the time of executing the deed and should have had a guardian because "[H]is mind was confused and he couldn't comprehend anything."

The appellees adduced evidence from one witness that he had known Emanuel since 1942 and had visited with him on many occasions during which he had made tape recordings for the local county historical society. Some of these occurred about the time of the conveyance in question. It was his opinion that Emanuel had a clear and lucid mind and he was "amazed at his clear recollection and clear consistency when he repeated things."

The Landes attorney testified that Emanuel came to his office in June, 1966, which was a few months after he had inherited the property from his son; that he wanted to deed the land to the mortgagor who held the $1,000 mortgage; that he advised him to try to sell the land for more than the mortgage; that he called Landes who was advised that the land was worth more than the mortgage and suggested he contact Emanuel. Two days later Emanuel and Reather conveyed the property to Landes for $200 plus assumption of the mortgage. It appears that Emanuel was worried that he could not raise the money to pay off this mortgage. Landes testified that he viewed the property and learned that in addition to the $1,000 mortgage there was a lifetime lease on the land held by Nelson Young, a friend of Emanuel's, and after Nelson's death, Nelson's wife would have possession of the land until her demise. Both were in their sixties. The lifetime lease provided that timber could be removed from the land along with fences and buildings. He testified that it was decided that the property was not worth anything in view of the mortgage and the lease; however, $400 would be paid. It is undisputed that only $200 was ever paid. He further testified that since the

conveyance he understood that Nelson Young and his wife were both deceased.

Landes was unaware that at the time Emanuel signed the deed he was recently released from the hospital. However, he was aware that Emanuel was feeble and had suffered a stroke. Landes believed that Emanuel sold him the property because of the mortgage and did not learn until he bought the land that the $1,000 mortgage was not due for two years. Emanuel's actions and behavior did not cause him to believe that he was unable to comprehend the validity of the conveyance.

In summary, Emanuel was 100 years old at the time of the conveyance of the deed; he had suffered a stroke a few years previously affecting him mentally and physically; the day following the conveyance he attempted to rectify it; he had to have constant care and attention as to his physical condition and was released from the hospital only a few days previously; only a $1,000 mortgage existed on the 67.5 acres at the time of the conveyance; the mortgage was not due for another two years; only $200 was paid by the purchaser, although he stated it was "decided" $400 would be a fair payment; the lifetime lease was being held by a couple in their sixties who were dead at the time of this action in 1970; the only witness who testified as to familiarity with the property and who had bought and sold property in the locality placed a value of $100 per acre or $6,750 upon the land. We hold that the evidence required to cancel this conveyance was met by the appellant and clearly preponderates in her favor. *McEvoy* v. *Tucker, supra,* and *Campbell* v. *Lux, supra.* Furthermore, in the case at bar, even if we apply the stricter requirement of clear, cogent and convincing evidence, we hold that the appellant has also met that burden of proof.

Again we must take this occasion to reiterate, in the circumstances, our disapproval of an attorney testifying in an action in which he is an advocate. See *Montgomery* v. *1st Nat'l. Bank of Newport,* 246 Ark. 502, 439 S.W. 2d 299 (1969), *Old American Life Ins. Co.* v. *Taylor,* 244 Ark. 709, 427 S.W. 2d 23 (1968), and *Rushton* v. *First Nat'l. Bank of Magnolia,* 244 Ark. 503, 426 S.W. 2d 378 (1968).

The decree is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

HARRIS, C.J., not participating.