James R. McWILLIAMS and Dottie Ann
KIMES *v.* Marjorie TINDER, Executrix of the Estate
of Velpoe Petty McWILLIAMS, Deceased

74-101                                    511 S.W. 2d 480

Opinion delivered July 15, 1974

*Parker & Kincannon,* for appellants.

*Franklin Wilder,* for appellee.

CONLEY BYRD, Justice. The appellants James R. McWilliams and Dottie Ann Kimes contested the Will of their grandfather Velpoe Petty McWilliams, giving all of his property to his surviving daughter Marjorie Tiner, on the grounds of mental incapacity and undue influence. From an adverse decree they bring this appeal raising the same factual issues.

The record shows that the testator, Velpoe Petty McWilliams, had three children,—*i.e.,* Audrey McWilliams, the father of appellant James R. McWilliams; Bernard McWilliams, the father of appellant Dottie Ann Kimes; and appellee Marjorie Tinder. Bernard predeceased his father several years ago. Audrey died in 1972, a month or so before the will here involved was executed. So far as the record shows Mr. McWilliams, following the death of his second wife, lived alone for the last eight or nine years of his life. During part or all of this time he had a bell hookup whereby he could summon Carl Tinder, the adult son of appellee Marjorie Tinder. Appellee Marjorie Tinder during this time saw that Mr. McWilliams' cooking and washing were taken care of to his satisfaction.

During the year of 1970, there were some allegations made to the effect that Carl Tinder was forging some checks on Mr. McWilliams. As a result of those allegations Audrey McWilliams and Marjorie Tinder both filed petitions for appointment of a guardian for Mr. McWilliams on the same day. Audrey acted through appellant's present counsel and Marjorie acted through her present counsel. At the hearing on the appointment of a guardian the parties submitted a letter from Dr. Kemal E. Kutait to appellant's counsel (under date of 8/31/70) as follows:

"In response to your request regarding the mental status of Mr. McWilliams, please accept the following.

Mr. McWilliams had slow emotional deterioration over the past several years, and although he is in excellent contact with reality and well oriented as to time, place, and person, and shows no imcompetence at times. Other times he shows marked senile changes, is poorly oriented, and, in my opinion, is certainly not competent to care for his personal financial affairs, despite the fact that he is in excellent contact and quite competent a majority of the time. The segment of time of which he is categorically incompetent, renders him potentially a hazard to his own well-being as well as to the well-being of his estate.

In my studied opinion, I feel that Mr. McWilliams is incompetent, at least part of the time, and is not capable mentally of caring either for himself, or for his estate."

Mr. McWilliams, who was still driving his own automobile at the time of the guardianship hearing, testified in his own behalf. Subsequently, on November 17, 1972, Dr. Kutait wrote to appellee's counsel the following letter:

"Mr. McWilliams was seen by this examiner on November 12, 1970, and was found to be at that time well oriented as to time, place, and person, and of sound mind.

This does not dispute the facts stated in a previous

letter, as Mr. McWilliams has transient periods of loss of contact with reality; however, at the time of this interview, the patient was felt to be medically of sound mind and stated that he was quite firm that he did not want his son to have any social or financial contact with him now or in the future. He was quite firm that he was not in agreement with the decision to make his son guardian of his body or his estate."

Shortly after the death of Audrey McWilliams, appellee's counsel caused Mr. McWilliams to be examined by Dr. Max Alden Baker who wrote the following letter:

"Mr. V. P. McWilliams, an eighty three year old, widowed, Caucasian, male, was evaluated psychiatrically in my office on 9/6/72 on referral from Mr. Franklin Wilder, his attorney. The purpose of the referral was a re-evaluation of the patient with regard to his competency and testamentary capacity.

Two years ago, in a setting of considerable family disharmony, the patient's son (who has since become deceased) declared his father incompetent to manage his affairs. The son had allegedly become upset by the amount of money that his father was giving to his sister (Mr. McWilliams' daughter). According to Mr. McWilliams this had been a long standing difficulty in the family because out of respect for the care and consideration that his daughter has given him, he has felt it desirable to help her out financially. He states with considerable feeling that the other members of his family never seemed to want to communicate with him or care for him as did his daughter, since they always expected something in return. He states that his daughter has been a great help to him and that he has been most happy to be able to help her financially.

From a psychiatric standpoint, Mr. McWilliams has minor impairments of memory function retention and recall which are quite compatible with his age of eighty three. Despite this, his mental faculties seem to be otherwise intact. There is no evidence at all of psychosis

or serious affective disorder. He has no history of drug or alcohol abuse. He has a clear understanding of the extent of his property and an awareness of the natural objects of his bounty thereby fulfilling the legal requirements for being able to write a will. I find no evidence that he is unable to manage his own affairs and he seems to be functioning quite well with only a modest amount of assistance from his daughter. At the present time, I see no psychiatric reason that his petition to restore his legal competency and to cancel the present guardianship should not be granted from a psychiatric standpoint."

At the Will contest hearing in addition to the three attesting witnesses to the Will the trial court heard testimony from Dr. Max Baker, appellee Majorie Tinder, Cora McWilliams, the surviving spouse of Audrey McWilliams, and appellant James R. McWilliams. Obviously we cannot say from the testimony of those witnesses that Mr. McWilliams did not have the mental capacity to execute a Will and counsel for appellant recognizes as much but contends that when Mr. McWilliams' mental capacity is coupled with the undue influence that is shown then the Will should be set aside. We disagree.

We have consistently held that the undue influence which avoids a Will is not the influence which springs from natural affection or which is acquired by kind offices but is such as results from fear, coercion or any other cause that deprives the testator of his free agency in the disposition of his property, *Parette* v. *Ivey, Executor,* 209 Ark. 364, 190 S.W. 2d 441 (1945). When we consider the testimony of the aforementioned witnesses, we cannot find the required quantum of proof necessary to establish the charge of undue influence.

In reviewing the fact issues here we have not set out the testimony in detail as such would serve no useful purpose as a precedent. Furthermore, we have reviewed the facts without giving any consideration to the testimony of appellee's counsel who appeared in the trial as an advocate for appellee but, who without withdrawing from the litigation, took the witness stand to testify in behalf of his client. We have

previously addressed ourselves to the disapproval of such conduct. See *Watson* v. *Alford*, 255 Ark. 911, 503 S.W. 2d 897 (1974); *Montgomery* v. *First National Bank of Newport*, 246 Ark. 502, 439 S.W. 2d 299 (1969); *Old American Life Insurance Co.* v. *Taylor*, 244 Ark. 709, 427 S.W. 2d 23 (1968); and *Rushton* v. *First National Bank of Magnolia*, 244 Ark. 503, 426 S.W. 2d 378 (1968).

Affirmed.