Donald C. DINGLEDINE *v.*
Ninon Terez DINGLEDINE

75-27                                                    523 S.W. 2d 189

Opinion delivered June 2, 1975

*Richard P. Osborne*, for appellant.

*John E. Jennings*, for appellee.

GEORGE ROSE SMITH, Justice. These parties were married on December 14, 1973, and separated about 100 days later, on March 23, 1974. Separate suits for divorce, both on the ground of personal indignities, were filed on the same day and later consolidated for trial. The chancellor granted a divorce to the wife, sustained the validity of an antenuptial agreement by which each spouse relinquished all interest in the other's property, and awarded the wife permanent alimony of $250 a month. By appeal the husband seeks a reduction in the amount of alimony; by cross-appeal the wife contends that the antenuptial agreement was contrary to public policy and therefore void.

We turn first to the cross-appeal. Mrs. Dingledine argues, on the authority of *Oliphant* v. *Oliphant*, 177 Ark. 613, 7 S.W. 2d 783 (1928), that the agreement was made to provide for the possibility of a divorce and is accordingly invalid. (See also Nelson, Divorce and Annulment, § 13.22 [2d ed., 1945]; Cathey, Ante-Nuptial Agreements in Arkansas — A Drafter's Problem, 24 Ark. L. Rev. 275 [1970].)

We cannot sustain that contention. As we explained in *Hughes* v. *Hughes*, 251 Ark. 63, 471 S.W. 2d 355 (1971), the *Oliphant* principle applies when the agreement is to be effective only in case there should be a divorce. In *Hughes* we upheld the contract even though it was to be controlling in the event of a divorce, because that was not its only purpose. In the case at bar the agreement makes no reference whatever to the possibility of divorce. The testimony about the parties' intentions is in conflict. We think the chancellor was right in finding the antenuptial contract to be valid.

On cross-appeal the appellee further contends that the agreement should be construed to deprive her of an interest in her husband's property only in the event of his death and not in the event of a divorce. The language of the agreement, however, does not support that interpretation. It recites that the prospective wife accepts the provisions of the contract "in lieu of all rights which she would otherwise acquire, by reason of the marriage, in the property or estate of Donald C. Dingledine." If the contract is valid — and we hold that it is — its effect is not abrogated by a divorce. Lindey, Separation Agreements and Ante-Nuptial Contracts, § 90-18A (1967). In fact, that was our holding in *Hughes* v. *Hughes*, *supra*. We find it unnecessary to discuss the appellee's other objections to the contract and affirm the decree on cross-appeal.

On direct appeal Dingledine insists that the allowance of $250 a month as alimony is excessive, in view of his ability to pay. *Coltharp* v. *Coltharp*, 218 Ark. 215, 235 S.W. 2d 884 (1951). According to Dingledine's federal income tax return, his net income from his service station business in 1973 was $3,-181.31, but he admits that owing to depreciation and other factors he received more than that amount from the business. He estimated his income in 1974 as being from $500 to $1,000 a month, but he feared that gasoline shortages might have an adverse effect. He supports two minor sons by an earlier marriage. Mrs. Dingledine is an experienced bookkeeper and, according to her brief, is earning $200 a month. She has no dependents. That the marriage lasted only a few months is a circumstance to be considered. *Ferguson* v. *Ferguson*, 125 Ind. App. 596, 125 N.E. 2d 816 (1955); *Thompson* v. *Thompson*, 222 Ore. 505, 353 P. 2d 241 (1960); *Taylor* v. *Taylor*, 357 P. 2d 1112 (Wyo., 1961). Upon the testimony as abstracted it is our best collective judgment that the award of alimony should be modified by a reduction to $150 a month.

In closing, we cannot overlook the fact that the appellant's attorney, who represented him at most of the hearings below and continues to represent him here, took the witness-stand and testified about points of fact that were disputed by the appellee. We have repeatedly admonished the members of our bar against such conduct. *Montgomery* v. *First Nat. Bank of Newport*, 246 Ark. 502, 439 S.W. 2d 299 (1969);

*Old American Life Ins. Co.* v. *Taylor*, 244 Ark. 709, 427 S.W. 2d 23 (1968); *Rushton* v. *First Nat. Bank of Magnolia*, 244 Ark. 503, 426 S.W. 2d 378 (1968). Since those decisions the principle has again been stated in the American Bar Association's Code of Professional Responsibility, adopted by this court by per curiam order on June 2, 1969. The new Code observes: "An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." Code, EC 5-9; also DR 5-101 B. We are unwilling to let such a violation of the Code pass unnoticed.

Modified and affirmed, with the appellee to be allowed a $300 attorney's fee.

BYRD, J., would reduce the alimony to $50 a month.