Kathleen Wharton SMITH *v.* Joseph Burleson WHARTON, III, Executor of the Estate of Iola H. Wharton, *Deceased;* Joseph Burleson Wharton, III, Trustee of the Iola H. Wharton Living Trust dated July 29, 1997; Joseph Burleson Wharton, III; Joseph Clark Wood, *A Minor;* Marion Randolph Smith, Jr.; Thomas Christopher Smith and Kathleen Smith Shonert

01-1045                                          78 S.W.3d 79

Supreme Court of Arkansas
Opinion delivered June 20, 2002

*Huckaba Law Firm, P.A.*, by: *Frank J. Huckaba*, for appellant/cross-appellee.

*Carney Law Firm, P.A.*, by: *Jodi G. Carney*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This is a will-contest case. Iola H. Wharton executed a will in 1980 by signing her name. In 1997, she undertook to execute another will, a declaration of trust, and various other estate planning documents. Because Iola was no longer able to write her name, she signed these instruments by mark. Following Iola's death on April 1, 1998, the 1997 will was admitted to probate and the decedent's son, Appellee Joseph B. Wharton, III, was appointed as executor.

Appellant Kathleen Wharton Smith, the decedent's daughter, challenged the instruments executed by mark alleging, among other grounds not involved in this appeal, that the will, trust, and other instruments were not signed in the manner required by Arkansas law.[1] The trial court, sitting as a chancellor and probate judge, found that the trust had been properly executed, but that the 1997 will had not been executed in accordance with the requirements of Arkansas law.

On appeal, Kathleen raises two points of error: First, that the trial court erred in concluding that the trust and trust documents were signed in compliance with Ark. Code Ann. § 16-55-102(a)(20) (1987); and second, that the trial court erred in allowing testimony by the attorney who not only drafted the instruments and represented Joseph in this litigation prior to the trial, but who also participated in the trial as an advocate. Joseph cross-appeals alleging that the trial court erred in ruling that the 1997 will was not executed in compliance with Ark. Code Ann. § 28-25-103 (1987) and in rejecting that will for probate. While we agree with Kathleen that the trial court erred in allowing an attorney to testify after the attorney had participated as an advocate during the trial, the error was not so prejudicial as to constitute reversible error under the facts of this case. Accordingly, as to the points raised on appeal and cross-appeal, we find no reversible error and affirm.

We review probate cases de novo, but we will not reverse the decision of the probate court unless it is clearly erroneous. *Dillard v. Nix*, 345 Ark. 215, 45 S.W.3d 359 (2001). Due deference will be given to the superior position of the probate judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Wells v. Estate of Wells*, 325 Ark. 16, 922 S.W.2d 715 (1996). We also review chancery cases de novo on the record, but we do not reverse a finding of fact by the chancery court unless it is clearly erroneous. *State v. Willis*, 347

---

[1] Kathleen also averred that the instruments were procured by Joseph and that her mother lacked testamentary capacity and was the victim of undue influence, fraud, or duress. All claims asserted by Kathleen were filed in the probate proceeding and in a separate chancery court case.

Ark. 6, 59 S.W.3d 438 (2001). A finding of fact by the chancery court is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

On September 19, 1980, Iola executed the first will by signing her name in the presence of two attesting witnesses. The second will was executed on July 29, 1997. Because she had broken her right arm and lost the use of it, Iola placed her mark on the 1997 will in the presence of three attesting witnesses. One of the witnesses had typed Iola's name on the will outside the presence of the other two witnesses.

Under the 1997 will, Joseph was named executor, and Iola's entire estate was left "to the Trustee named and identified in the IOLA H. WHARTON LIVING TRUST." A separate declaration of trust created the Iola H. Wharton Living Trust and named Joseph as the trustee and remainderman and Iola as the primary beneficiary. Iola placed all her personal property and, by quitclaim deed, 152.22 acres of real property in Columbia County into the trust. The trust specified how the trust assets were to be distributed upon Iola's death. The first $45,000 was to remain in trust for the benefit of Norvelle Z. Turner, her housekeeper, and Joseph Clark Wood. Other sums of money would be distributed as follows: Mary Lisa Wharton, her daughter, $10,000; Joseph, $10,000; Marion Randolph Smith, Jr., $2,500; and Thomas Christopher Smith, $5,000. Iola's personal and household effects would be divided among her three children: Kathleen, 20%; Joseph, 40%; Mary, 40%, with the remaining assets including lapsed gifts going to Joseph, as the remainderman.

The 1980 will left Iola's personal and household effects to Kathleen and Joseph per stirpes, and bequeathed $2,000 to Norvelle and $2,000 plus some gold and diamond personal effects to Mary. The rest of her real and personal property was to be divided evenly between Joseph and Kathleen. Joseph and Kathleen were named coexecutors and co-trustees. As previously mentioned, Iola signed the 1980 will in the presence of two attesting witnesses.

This matter was tried to the court over the course of three separate hearing dates. Because the two attorneys who drafted the contested documents were expected to testify, the parties stipulated that neither attorney would serve as counsel at trial, but that both attorneys could remain in the courtroom during the proceeding.

At the first hearing on August 18, 1999, William J. Wynne, an attorney engaged in the private practice of law in El Dorado since 1951, testified that he prepared the 1980 will, including a proof-of-will affidavit, at Iola's request while she lived in El Dorado. He verified the testamentary provisions of the will. After Iola moved to Mountain Home in 1994, he had no further connection with her as a client or friend. Next, Joseph testified about his duties and qualifications as trustee under the living trust. He also testified that he moved from Dallas to Mountain Home in the spring of 1997. At Iola's request, Joseph contacted Lane Strother, an attorney engaged in the private practice of law in Mountain Home, to speak with him about preparing the will and living trust. Iola instructed Joseph to write down how she wanted to divide up her estate. After his mother checked his notes for accuracy, Joseph transferred the list to computer tape and took it to Mr. Strother. Joseph further testified that Mr. Strother came out and spoke with Iola before he prepared the will and trust documents. At this point, Joseph went to the attorney's office, picked up the documents and delivered them to Iola for her review. Mr. Strother then returned to Iola's home on July 29, 1997, with two other witnesses. All three of them witnessed Iola make her mark on the will, trust, and related documents. Joseph was also present when his mother made her mark on the documents. During this hearing, Mr. Strother engaged in a colloquy with the trial court concerning Joseph's duty to account under the trust. He also advised the court that a copy of an appraisal report would be identified as "Respondent's Eight."

At the second hearing on March 15, 2000, during Joseph's testimony about tax returns filed on behalf of the estate, Mr. Strother again interjected that he had a copy of the 1040 tax return filed in 1998. The trial court then decided that Mr. Wynne would not be allowed to present legal argument regarding

the documents executed in 1997. This led to a discussion about whether Mr. Strother should be allowed to testify as a witness following his earlier participation in the hearings. Next, Iola's nurses were called to testify about her competency and the fact that Joseph did not attempt to control his mother or restrict access to her. Joseph also repeated his earlier testimony regarding the events leading up to the execution of the 1997 will and trust. His testimony was followed by that of Mary T. Saine, an attesting witness. She recounted her observations about Iola's state of mind on July 29, 1997, and she confirmed that Mr. Strother explained the terms of the will and trust to Iola. Ms. Saine also testified that she witnessed Iola make her mark on both the will and the trust documents, and that when she typed the will and trust documents at Mr. Strother's office, she typed Iola's name on the documents. At this point, Kathleen noted Mr. Strother's earlier participation in the trial and objected to him being allowed to testify as a witness. The trial court did not rule on the objection, but instead adjourned the hearing in order to review the transcript of the record.

The dispute over Mr. Strother's role as a witness continued at the final hearing on April 12, 2000. Ultimately, the trial court ruled that Mr. Wynne was precluded from serving as an advocate; whereas, Mr. Strother was allowed to testify as a witness notwithstanding his participation as an advocate during the trial. In reaching this conclusion, the trial court reasoned that to disqualify or exclude "the person who drew the instruments, talked to the parties about their preparation [and] was present at their execution . . . would, in fact, work a substantial hardship." Thus, Mr. Strother became the final witness and testified about the preparation and execution of the 1997 will and trust documents, as well as his observations concerning Iola's testamentary capacity and the absence of any undue influence by her son, Joseph.

### Admissibility of Attorney's Testimony

We consider Kathleen's second argument first. She contends that the trial court erred in allowing Mr. Strother to testify after he actively participated in the trial. In response, Joseph asserts the

trial court correctly found that the exclusion of his attorney's testimony would work a substantial hardship on him.

■ "The general rule is clear and unmistakable. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. The reasoning underlying the general rule is to prevent prejudice and a conflict of interest." *Arthur v. Zearley*, 320 Ark. 273, 279, 895 S.W.2d 928, 931 (1995). Rule 3.7 of the Rules of Professional Conduct provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Model Rules of Professional Conduct 3.7 (2001). We have repeatedly admonished members of the bar that an attorney should not act as both trial counsel and as a material witness:

> [W]e must once again express our disapproval of the conduct of an attorney who testifies in a case while also acting as an attorney in the case. *Rushton v. First Nat. Bank of Magnolia*, 244 Ark. 503, 426 S.W.2d 378 (1968); *Old American Life Ins. Co. v. Taylor*, 244 Ark. 709, 427 S.W.2d 23 (1968); *Montgomery v. First Nat. Bank of Newport*, 246 Ark. 502, 439 S.W.2d 299 (1969); *Watson v. Alford*, 255 Ark. 911, 503 S.W.2d 897 (1974); *McWilliams v. Tinder*, 256 Ark. 994, 511 S.W.2d 480 (1974); *Dingledine v. Dingledine*, 258 Ark. 204, 523 S.W.2d 189 (1975); *Canal Ins. Co. v. Hall*, 259 Ark. 797, 536 S.W.2d 702 (1976); *Jones v. Hardesty*, 261 Ark. 716, 551 S.W.2d 543 (1977); *Enzor v. State*, 262 Ark. 545, 559 S.W.2d 148 (1977); *Boling v. Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979).

*Bishop v. Linkway Stores, Inc.*, 280 Ark. 106, 125, 655 S.W.2d 426, 436 (1983) (per curiam supplemental opinion). In *Enzor v. State*, 262 Ark. 545, 559 S.W.2d 148 (1977), we explained that "[a]n attorney who is to testify in an action should withdraw from the litigation. On the other hand, if an attorney is going to serve as an

advocate for his client, he should refrain from testifying in the action." *Id.* at 551, 559 S.W.2d at 151.

It is undisputed that Mr. Strother drafted the contested documents and represented Joseph in this litigation prior to trial. Due to the fact that Mr. Strother was expected to testify as a witness, Joseph retained another attorney, Jodi F. Carney, to represent him at the trial. Upon agreement of both parties, Mr. Strother remained in the courtroom throughout the proceedings and, in fact, sat at the counsel table. As previously mentioned, Mr. Strother interjected comments about Joseph's duty to make an accounting under the trust documents and advised the court regarding the introduction of an exhibit. As such, Mr. Strother acted as an advocate before he was allowed to testify as a witness.

To allow an attorney to testify under such circumstances would contravene the general rule expressed in Rule 3.7 of the Model Rules of Professional Conduct, unless any one of the three exceptions outlined in the rule is applicable to the case before us. As to the first two exceptions, Mr. Strother's testimony did not involve an uncontested matter; nor did it relate to the nature and value of legal services rendered. The trial court allowed Mr. Strother to testify under the third exception based upon its finding that the exclusion of his testimony would work substantial hardship on the client. In so ruling, the trial court misinterpreted Rule 3.7. The term "disqualification" that appears in the third exception does not refer to the exclusion of a lawyer's testimony; rather, it refers to a lawyer's disqualification as an advocate. *See* the Commentary to Model Rules of Professional Conduct 3.7 ("[i]n determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client."); *McCoy Farms, Inc. v. J & M McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978) ("The rule against the attorney who becomes a witness continuing as an advocate was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him.").

In this case, the opposing party was not attempting to call Mr. Strother as a witness in order to disqualify him from acting as an advocate at the trial. In fact, as of the first hearing date,

Mr. Strother was expected to be a witness, and his client had retained another attorney, Ms. Carney, to represent his interests. Thus, Mr. Strother had already declared that his disqualification as an advocate would not work a substantial hardship on his client. Once the trial started and Mr. Strother reassumed his role as an advocate, it was too late for him to become a witness. Under these circumstances, we conclude that the trial court erred in allowing the attorney to testify as a witness. Our inquiry does not, however, end there.

■ We must decide whether the trial court committed reversible error when it allowed Mr. Strother to testify after he had participated as an advocate during the trial. The fact that an attorney has served as both witness and advocate in the same action does not require automatic reversal. *B. A. McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990). We will not consider the attorney's testimony as evidence, but if there is other evidence that will allow this court to affirm, we will do so. *Id.* Thus, in addressing the merits of the other issues raised on appeal and cross-appeal, we will disregard Mr. Strother's testimony.

*Sufficiency of Iola's Mark on the Trust and Related Instruments*

Kathleen argues that the trust and related instruments should be set aside because Iola's mark should not be considered a signature unless her name is written near the mark and witnessed by a person writing his or her own name as a witness; that is, a signature by mark on a trust document must meet the same strict statutory requirements that govern the execution of a will. Joseph counters that execution of the trust and related instruments is not governed by the strict requirements of the Arkansas Probate Code, but by our case law and by Ark. Code Ann. § 16-55-102(a)(20) (1987).

■ "The purpose of proving one's handwriting is to establish the fact that the instrument is genuine and that it represents the intent of the party against whom or for whose benefit it operates." *Carter v. Williams*, 224 Ark. 378, 381, 273 S.W.2d 531, 532 (1954). In *Carter*, we upheld the validity of the instrument where

a woman whose right arm was paralyzed orally acknowledged before a notary public that her signature was on a deed.

■ Section 16-55-102 of Arkansas Code Annotated provides that: "'Signature' or 'subscription' includes a mark, when the person cannot write, his name being written near it and witnessed by a person who writes his own name as a witness[.]" Ark. Code Ann. § 16-55-102(a)(20). This court has held that a deed of trust, signed by mark, is just as effective as if signed by written signature, absent an affirmative showing that it was not signed. *Henry v. Union Sawmill Co.*, 171 Ark. 1023, 287 S.W. 203 (1926). To accept the mark as a valid signature, the person who writes the name must also sign his or her own name, *or* "it may be proved as genuine by other testimony, though there be no attesting witness to it." *Id.* at 1026, 287 S.W.2d at 204.

■ In the instant case, Iola's name was typewritten on the trust instrument. According to the notary public's certificate of acknowledgment, Iola told him that she had signed the trust instrument. The facts stated in the acknowledgment are prima facie proof of Iola's signature on the document. Ark. Code Ann. § 21-14-110 (Repl. 1996) ("All . . . acknowledgments taken by notaries public . . . shall be received as evidence of the facts therein stated in all the courts of this state."). See also, Ark. R. Evid. 902(8) (2002); Mueller & Kirkpatrick, *Evidence* § 9.27 (2nd Ed. 1999). In addition to the prima facie case made by the certificate of acknowledgment, Mary T. Saine testified that she witnessed Iola make her mark on the document. We, therefore, hold that the execution of the trust and related instruments was in compliance with Ark. Code Ann. § 16-55-102(a)(20) and our case law. The trial court's ruling on this point is affirmed.

*Cross-Appeal: Sufficiency of Iola's Mark on the Will*

Joseph's only point on cross-appeal is that the trial court erred in ruling that the 1997 will was not properly executed. He notes that the 1997 will had three attesting witnesses whose signatures were notarized, and that Kathleen does not appeal the trial court's finding that the will was not the result of undue influence, coercion, fraud, or a lack of testamentary capacity. Kathleen

replies that the execution of the 1997 will failed to meet the statutory requirements. We agree with the trial court's ruling and affirm.

■■ ■ The issue raised on cross-appeal requires us to engage in statutory interpretation. Initially, we point out our well-settled rules of statutory construction:

> We review issues of statutory interpretation de novo, as it is . for this court to decide what a statute means. *Fewell v. Pickens*, 346 Ark. 246, 57 S.W.3d 144 (2001); *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001); *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Raley v. Wagner*, 346 Ark. 234, 57 S.W.3d 683 (2001); *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997).

*Mississippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 550, 65 S.W.3d 867, 872-73 (2002).

We now turn to the specific statute that governs the execution of a will, Ark. Code Ann. § 28-25-103 (1987), in order to determine whether the 1997 will was properly executed. Section 28-25-103 provides:

> (a) The execution of a will, other than holographic, must be by the signature of the testator and of at least two (2) witnesses.

> (b) The testator shall declare to the attesting witnesses that the instrument is his will and either:

> (1) Himself sign; or

> (2) Acknowledge his signature already made; or

> (3) Sign by mark, his name being written near it and witnessed by a person who writes his own name as witness to the signature; or

(4) At his discretion and in his presence have someone else sign his name for him. The person so signing shall write his own name and state that he signed the testator's name at the request of the testator; and

(5) In any of the above cases, the signature must be at the end of the instrument and the act must be done in the presence of two (2) or more attesting witnesses.

(c) The attesting witnesses must sign at the request and in the presence of the testator.

Ark. Code Ann. § 28-25-103 (1987). This section has remained unchanged since its enactment in 1949. *See* History of Ark. Code Ann. § 28-25-103 (1987).

This court has had few occasions to interpret section 28-25-103, especially where the will is signed by the testator's mark. In 1960, we held that the statute clearly requires the will to be executed in the presence of two or more attesting witnesses. *Ash v. Morgan*, 232 Ark. 602, 339 S.W.2d 309 (1960). The attesting witnesses must sign the will in the presence of the testator and in the presence of each other. *Id*. Three years later, this court ruled that a will was not executed in the manner required by the statute because the scrivener failed to write his own name as a witness to the testator's mark, even though two other witnesses properly attested the will. *Green v. Smith*, 236 Ark. 829, 368 S.W.2d 280 (1963). In *Green*, we discussed the requirements of Ark. Stat. Ann. § 60-403 (Supp. 1963), now codified at Ark. Code Ann. § 28-25-103:

Sub-section (3) plainly provides that a testator's signature by mark must be witnessed by a person who writes his own name as a witness to that signature. Sub-section (5) which follows, and is in addition to the requirement of (3), provides significantly that in case sub-section (3) is followed, such act "must be done in the presence of two or more attesting witnesses." In other words, there are four methods for a testator to sign his will and, as we construe this statute, when we consider it as a whole and sub-section (5) in particular, there must be at least two attesting witnesses in addition to the requirements of either of these four methods. We interpret the provisions of sub-sections (3) and (5)

of this statute to be mandatory in requiring a minimum of three subscribing witnesses to make the will in question valid.

*Id.* at 831, 268 S.W.2d at 281.

Shortly thereafter, in *Priola v. Priola*, 237 Ark. 798, 376 S.W.2d 29 (1964), we stated that where the same two persons witness the testator's mark and attest to the execution of the will, the will has not been executed in compliance with the statute. Our statutory interpretation in the *Priola* case included the following analysis of subsection (b)(5) of Ark. Code Ann. § 28-25-103:

> But the new statute (§ 19 of Act No. 140 of 1949) says in Paragraph (5) that the person who writes the testator's name must do so "in the presence of two or more attesting witnesses"; and certainly such person who writes the testator's name cannot be an attesting witness to his own signature. In short, the attesting witness to the testator's mark cannot also act in the dual capacity of an attesting witness to the will.

*Id.* at 801, 377 S.W.2d at 31.

In 1974, this court restated its prior holding that "where the testator signs by a mark, it is mandatory that three signatures be affixed, one to witness the testator's mark and two to attest the will." *Patrick v. Rankin*, 256 Ark. 310, 310-11, 506 S.W.2d 853, 854 (1974). Likewise, in *Shamoon v. Tombridge*, 291 Ark. 222, 723 S.W.2d 827 (1987), we reaffirmed the requirement of three attesting witnesses where a will is executed by mark:

> This statute specifically requires that the testator, if he signs by mark, must have a witness who signs the document attesting to his mark . . . . The statute also requires that two attesting witnesses must sign at the end of the instrument.
>
> We have interpreted this statute to be mandatory in order to validate a non-holographic will.

*Id.* at 223, 723 S.W.2d at 827-28. Furthermore, we concluded that two attesting witnesses and a notary public's signature were not sufficient because the notary was merely notarizing the attesting witnesses's signatures, not the testator's mark. *Id.*

In the instant case, three witnesses attested to the execution of the will. The will does not refer to any witness as being

a special witness to the mark, although the language used does state, in substance, that the mark was witnessed by all three attesting witnesses. However, none of the attesting witnesses wrote Iola's name near her mark at the time of the signing of the will. Thus, the writing of the testatrix's name by the witness to the mark was not done in the presence of two attesting witnesses. In fact, the writing of Iola's name was done at Mr. Strother's office at a different time, and the testimony does not show that anyone witnessed the writing of the name on the will.

Because this court has held that the person who writes the testator's name must do so "'in the presence of two or more attesting witnesses[,]'" we must conclude that the 1997 will was not executed in compliance with our statute. *Priola v. Priola*, 237 Ark. at 801, 376 S.W.2d at 31. To hold otherwise, this court would have to overrule prior case law construing the statutory requirements that govern the execution of a will by mark. We decline to do so, and affirm the trial court on cross-appeal.

Affirmed. A copy of this opinion will be forwarded to the Committee on Professional Conduct.

CORBIN, THORNTON, and HANNAH, JJ., concurring in part; dissenting in part.

RAY THORNTON, Justice, concurring in part; dissenting in part. In this case, we are asked to determine whether a will was validly executed. The majority opinion, relying on a case from 1964, which was based upon an untenable interpretation of Ark. Code Ann. § 28-25-103 (1987), concludes that Iola Wharton's Last Will and Testament was not properly executed. The majority reasons that the will, which was witnessed by three witnesses, was not properly executed because Ms. Wharton's name was typed on the face of the will prior to the time that Ms. Wharton placed her "X" on the document. I cannot agree with this conclusion and must respectfully dissent.

The majority opinion holds: "[B]ecause this court has held that the person who writes the testator's name must do so 'in the presence of two or more attesting witnesses,' we must conclude that the 1997 will was not executed in compliance with our stat-

ute. *Priola v. Priola*, 237 Ark. At 801, 376 S.W.2d at 31." In my view, the holding in *Priola* was that the same person who witnessed the authenticity of the signature mark could not also act as one of the two attesting witnesses. That was not the fact situation in the case now before us. Accordingly, that case is not controlling on the case *sub judice*.

Not only do I take issue with the majority's interpretation of the holding in *Priola*, I must also take issue with *Priola's* interpretation of the statutory requirements for execution of a will when the testator chooses to sign the will by marking it with an "X." In *Priola*, the court stated:

> When we compare §11512 and §11513 of Pope's Digest (the previous statutes on the mode of executing a will) with §19 of Act No. 140 of 1919 as found in Ark. Stat. Ann. 60-403 (Supp. 1963) (the present statutes on the requirements for executing a will), the correctness of our holding in *Green v. Smith, supra,* becomes readily apparent. The old statute said in § 11513 Pope's Digest that the person who wrote the testator's name "shall write his own name as a witness to such will"; thus recognizing that the same person could write the testator's name and also be a witness to such will. But the new statute (19 of Act No. 140 of 1949) says in Paragraph (5) that the person who writes the testator's name must do so "in the presence of two or more attesting witnesses"; and certainly such person who writes the testator's name cannot be an attesting witness to his own signature. In short, the attesting witness to the testator's mark cannot also act in the dual capacity of an attesting witness to the will.

*Priola, supra.*

I do not interpret the relevant statutory provision as requiring that we invalidate a will because the testator's name was typed prior to the marking of the "X" rather than printed by hand at the time the "X" was marked, and to the extent that *Priola* stands for that proposition, I would not hesitate to overrule the case on that point as a faulty interpretation of the statute. The "act" to which subsection five of Ark. Code Ann. § 28-25-103 refers is not the printing of the testator's name by the mark; instead, the "act" refers to the testator's signature by mark. Clearly the testator's placement of the "X" on the document is the "act" that must be

performed in the presence of two or more witnesses. If *Priola* holds otherwise, it is not a correct interpretation of the statute, and should be overruled.

In the case now on review, Ms. Wharton's will was executed pursuant to Ark. Code Ann. § 28-25-103. The statute provides in relevant part:

> (a) The execution of a will, other than holographic, must be by the signature of the testator and of at least two (2) witnesses.
>
> (b) The testator shall declare to the attesting witnesses that the instrument is his will and either:
>
> \* \* \*
>
> (3) Sign by mark, his name being written near it and witnessed by a person who writes his own name as witness to the signature; or
>
> \* \* \*
>
> (5) In any of the above cases, the signature must be at the end of the instrument and the act must be done in the presence of two (2) or more attesting witnesses.
>
> (c) The attesting witnesses must sign at the request and in the presence of the testator.

*Id.*

Without conflicting prior case law on the subject, we must look to the statutory provision of Ark. Code Ann. § 28-25-103 in our determination of whether Ms. Wharton's will was properly executed. After reviewing the statute and the facts surrounding the case *sub judice*, I would hold that Ms. Wharton properly executed her will. Ms. Wharton signed the will using an "X." Her name was typed underneath the "X" by Mary Saine. Ms. Saine then signed her name at the bottom of the attestation clause, along with two attesting witnesses, acknowledging that Ms. Wharton's will was properly executed. Both the testator's "X" mark and Ms. Saine's authentication of that mark were done in the presence of the two attesting witnesses who signed an affidavit, stating that the testator affixed her mark, and declared the instrument to be her will and requested the witnesses to sign in her presence.

Nowhere in the statute is there a requirement that the printed name of the testator found under the "X" mark be placed there after the "X" is affixed. Therefore, the fact that Ms. Saine typed Ms. Wharton's name on the will prior to Ms. Wharton placing her mark on the will is of no consequence. The will was prepared by Ms. Saine in one location and brought to Ms. Wharton for execution at a different location. The administrative procedure of typing the will and the name of the testator prior to its execution should not invalidate Ms. Wharton's will. I would hold that the will complied with the statute and should have been admitted to probate.

We have held that in the interpretation of wills, the paramount principle is that the testator's intent governs. *Estate of Harp v. Harp*, 316 Ark. 761, 875 S.W.2d 490 (1994). The result reached by the majority opinion frustrates Ms. Wharton's intent. Ms. Wharton was under no undue influence when she placed her "X" on the will. Additionally, she was in full possession of her mental facilities at the time the will was signed. There was testimony that Ms. Wharton could read and write, but signed by mark *only* because of an injury to her arm. Clearly, Ms. Wharton's intent was that her 1997 will dispose of her estate. Accordingly, I would reverse the trial court and admit her will executed July 29, 1997, to probate.

I respectfully dissent from the portion of the majority's opinion which holds that Ms. Wharton's 1997 will was not properly executed. However, I agree with the majority's disposition of the remaining issues on appeal.

I am authorized to state that Justices CORBIN and HANNAH join in this dissent.