IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2003 Session

**CONCHITA JOHNSON v. GREG JOHNSON**

**Direct Appeal from the Chancery Court for Sevier County**
**No. 90-4-241     Hon. Ben W. Hooper, II., (by interchange) Judge**

**FILED SEPTEMBER 29, 2003**

**No. E2003-00130-COA-R3-CV**

The Trial Court entered Judgment for back child support, ordered increase in continuing child support, and awarded custodial parent attorney's fees. Father, who sought change of custody, appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., joined. HOUSTON M. GODDARD, P.J., did not participate.

Brent R. Watson and Suzanne N. Price, Knoxville, Tennessee, for Appellant.

Monica J. Franklin, Knoxville, Tennessee, and Bruce Hill, Sevierville, Tennessee, for Appellee.

**OPINION**

In this action the Trial Court refused to change custody of one child to the father, awarded the mother a Judgment for back child support, increased the monthly child support payments, and awarded the mother attorneys fees. The father appeals these rulings by the Trial Court.

The parties were divorced in 1993. The father is a stockbroker and the mother is a school teacher. Three children were born during the marriage: a son in 1984, and twin daughters in 1988. The Marital Dissolution Agreement (MDA) entered by the Trial Court provided for joint custody of the minor children with primary physical custody with the mother. Father had very liberal

visitation rights: alternating Wednesday to Sunday nights with the son; and alternating Thursday to Sunday nights with the daughters, plus alternating Wednesday evenings, in addition to four additional full weeks to be determined by agreement. At the time of the divorce, the mother lived in Knoxville and the father lived in Sevierville. The Agreement provided that the father would pay the mother "the sum of $1,500.00 per month, as support for the parties' three children, such sum being pro rated among the children."

The parties only followed the co-parenting schedule set forth in the Agreement for approximately one year after the divorce. Mother moved back to the Sevierville area in 1995. In 1994 or 1995 the minor son, Reed, began residing more with his father. Mother admits that the son resided the majority of time with his father, but contends the original parenting schedule was followed until 1997. The son testified that he spent about 70% of his time at his father's, and 30% of his time at his mother's, which he preferred because his father lived in Sevierville and his school was in Sevierville. Another factor in his preference was that the son had his own bedroom in the father's home, whereas his mother's house had only three bedrooms, and when with his mother, he had to stay in one of his sister's room and the sister would move in with the other sister. He testified his father purchased the majority of his clothing and provided the majority of his meals. After he got his driver's license and a car in late 2001, he began spending nearly equal amounts of time with each parent. After the father's petition was filed in 1999, the mother finished out the basement in her house to provide the son his own bedroom. The daughters, on the other hand, spent very little overnight time with their father, considerably less than provided in the MDA. The evidence established that the parents did not force them either way, and that the time spent with each parent was their choice.

The father in his Petition to Modify filed in 1999, sought a change of custody or a reduction in support payments and increased visitation. Prior to trial, he withdrew his petition for custody of the daughters. Father insists on appeal that the $1,500.00 per month as agreed in the MDA should be pro-rated according to its terms because Reed resided the majority of time with him, making him the primary residential parent. He continued to pay the full amount of child support until late 2001. He further claims that a decrease in his support payments was proper because he had experienced a significant decrease in income as a result of opening his own independent brokerage business in 1997. The business had not produced the income he had hoped and by 1999 he was unable to make the support payments. In 1999, the father unilaterally decreased his child support payments from $1,500.00 to $800.00 a month, and missed some payments altogether. The mother initiated a contempt proceeding in November, 2000, seeking child support arrearage.

In the mother's counter-claim, she conceded that the son had spent more time with his father than provided in the MDA, but denied that this constituted a substantial and material change to justify a change in custody. She also alleged that the father had spent less time than stated in the MDA with the twins, and asserted a claim for increased child support on their behalf.

The mother argues that the percentage of parenting time with the father as set forth in the MDA works out to 43% for the son, and therefore an increase to 50% from 1999 to 2001 (when the son began spending more equal time with each parent) cannot be considered a substantial

and material change in circumstances. She maintains that most of the increased time the son did spend with his father was pre-petition and not subject to a retroactive order of support. She offered evidence that the son spent 211 nights out of 365 with his father in both 1998 and 1999. The father claims he overpaid his support by $500.00 per month by paying the full amount, and that the mother now owes him $500.00 per month for the 48 months preceding trial.

Following trial in November of 2002, the Trial Court denied the petition to change custody. He found that the son had shared time with each parent in "substantial compliance" with the MDA since 1999, thus no support adjustment was due either party on that basis. The Judge reasoned that any potential decrease in child support for the son was offset by the father's decreased parenting time with the daughters. Before trial, the parties came to a voluntary agreement that the father's future child support for the two daughters should be $1,650.00 per month according to the Guidelines. The mother was awarded child support arrearage calculated from April 1999, when she filed her counter-petition, which netted out to $32,720.00 plus interest. The award included a credit to the father of $75.00 per month for 48 months, or $3,600.00 for necessaries expended on behalf of the son. Mother was also awarded $4,000.00 in attorneys fees.

Our review of questions of law are *de novo*, affording no deference to the conclusions of law made by the lower courts. *Kendrick v. Shoemake,* 90 S.W.3d 566, 569 (Tenn. 2002). The Trial Court's findings of fact are *de novo* upon the record and accompanied by a presumption of correctness unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d)*; Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001).

The failure to follow a parenting plan may be considered a material change in circumstances for purposes of modifying custody. Tenn. Code Ann. § 36-6-101(a)(2)(B)*; Kendrick,* 90 S.W.3d at 566; *Lurie v. Manning,* 1999 WL 732692 at *2 (Tenn. Ct. App. 1999). A material change in circumstances are changes occurring after entry of the order sought to be changed, that affect the child's well-being in a meaningful way. *Kendrick,* 90 S.W.3 at 570. However, where the Trial Court finds that a material change has occurred, the determination of whether to order a change of custody remains a discretionary matter with the Trial Court, by applying the criteria enumerated in Tenn. Code Ann. § 36-6-106. *Id.*

The proof in this record does not support a custody change based upon any risk to the children's well-being. In fact, prior to the trial, Father had withdrawn his petition for custody of the daughters. The custody modification sought were apparently economically driven, as indicated by Father's testimony.

We hold that the Trial Court did not abuse its discretion in finding no substantial and material change in circumstances justifying a change in custody. Moreover, the son has now reached the age of majority.

The father takes issue with the Trial Court's finding that the parties were in "substantial compliance" with the Marital Dissolution Agreement and thus no child support was owed to him from 1999 to present. He contends that since he was "acting as primary residential custodian"

of the son prior to 1999, that the mother owes him support.  The father misconstrues *Gray v. Gray,* 78 S.W.3d 81-83, (Tenn. 2003), to the extent he contends that the son's change in residence automatically resulted in a custody change in his favor and imposes an automatic support obligation upon the mother.  This type of retroactive modification of child support is prohibited by statute. *Gray* held that there can only be one primary residential parent, and that the designation "should be changed" in appropriate cases to reflect the circumstances when a child resides more than 50% of the time with the non-custodial parent.  A party seeking designation as primary residential parent must file the necessary petition with the court to have the designation changed by court order.

It is well-settled that child support payments cannot be altered, reduced or forgiven by the court once they become due.  *Rutledge v. Barrett,* 802 S.W.2d 604 (Tenn. 1991); *Alexander v. Alexander,* 34 S.W.3d 456 (Tenn. Ct. App.  2000).   Tenn. Code Ann.  36-5-101(a)(5).

Moreover, there was no abuse of discretion in the Trial Court's finding that the increase in residential time that the son spent with the father from 43% under the MDA to 50% constituted "substantial compliance."

The MDA agreed to by the parties contains the following:

The parties acknowledge that no action by them will be effective to reduce child support after the due date of each payment, and that they understand that court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated under the terms of this agreement.

The Trial Court properly awarded the arrearages due to the father's unilaterally decreasing or eliminating payments without court authorization.

The father interprets the Court's ruling as a downward deviation for the son based upon the increased time spent with the father.  However, the Court found was that the father's increased time with the son up until late 2001, plus the decreased time with the daughters cancelled out in a financial wash, and no adjustment was proper under these circumstances.  Trial courts have authority to order back child support.  *State ex rel. Coleman v. Clay,* 805 S.W.2d 752, 755 (Tenn. 1991); *McCarty v. McCarty* 863 S.W.2d 712, 716 (Tenn. Ct. App. 1992).   These awards are reviewable upon an abuse of discretion standard.  *State v. Springs,* 976 S.W.2d 654, 656 (Tenn. Ct. App. 1997); *Tallent v. Cates,* 45 S.W.3d 556, 560 (Tenn. Ct. App. 2000).

A non-custodial parent may be entitled to an award for any necessaries provided to the child.  "[N]on-custodial parents may be given credit against their child support obligation for payments made on behalf of their children if such payments are for necessaries that the custodial parent either failed to provide or refused to provide." *Castle v. Baker,* WL 1105321, at *3-4 (Tenn. Ct. App. 2001).  The Trial Court awarded the father $75.00 per month credit against the arrearage for necessaries expended over 48 months.  The father argues this is error, because the MDA pro-rated the child support obligation, and he is therefore entitled to $500.00 per month credit for necessaries on behalf of the son.  We find this argument to be without merit.  Based upon the father's level of

income of $7,338.00 per month, as agreed upon by the parties, under the Guidelines he is now obligated for $1,650.00 per month for the two remaining minor children. The Court did not abuse its discretion by disallowing the father a credit for the pro-rated child support he claimed. *See Rutledge v. Barrett*, 802 S.W.2d, 604 (Tenn. 1991); *Bell v. Bell,* 1996 Tenn. App. Lexis 599 (Tenn. Ct. App. Sept. 25, 1996).[1]

Trial courts have discretion in awarding attorneys fees. Tenn. Code Ann. §36-5-103(c). Where a parent retains an attorney's services in custody or child support proceedings that ultimately result in a benefit of the minor child, a proper basis for awarding reasonable attorney's fees is established. *Harris v. Harris,* 83 S.W.3d 137, 141 (Tenn. Ct. App. 2001); *Dalton v. Dalton,* 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993). The mother's action ultimately inured to the benefit of the children and she presented uncontradicted proof of incurring $11,000.00 in legal fees. We affirm the Trial Court's award of attorney's fees to the mother.

The Judgment of the Trial Court is affirmed for the reasons discussed, and the cause is remanded with the cost of the appeal assessed to Greg Johnson.

_____
HERSCHEL PICKENS FRANKS, J.

---

[1]The Trial Court did not specifically set out how it arrived at the credit of $75.00 per month. It appears to be based on its finding that the son spent approximately 15% more time with the father during the 1995-1999 period, than contemplated in the MDA. 15% of the pro-rated child support of $500.00 per child is $75.00.